JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HOME PROPERTIES RACQUET CLUB EAST, LLC

**DEFENDANTS**
ACS PARTNERS, LLC

**(b)** County of Residence of First Listed Plaintiff    Monroe County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Fulton County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's *(Firm Name, Address, and Telephone Number)*
William J. Taylor, Esquire, White and Williams, LLP, 1650 Market Street, Suite 1800, Philadelphia, PA 19103
215-864-6305

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1. U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2. U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent. Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
breach of construction contract, intentional misrepresentation, negligent misrepresentation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    **DEMAND $** 1 million    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:    JUDGE   n/a    DOCKET NUMBER

DATE   12/09/2015    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

16347696v.1

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  850 Clinton Square, Rochester, NY 14604

Address of Defendant:  9755 Dogwood Road, Suite 105, Roswell, GA 30075

Place of Accident, Incident or Transaction:  Levittown, Bucks County, PA
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).　　Yes ☒　No ☐

Does this case involve multidistrict litigation possibilities?　　Yes ☐　No ☒

*RELATED CASE IF ANY:*

Case Number:  N/A 　　　Judge _____　　Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in earlier numbered suit pending or within one year previously terminated action in this court?
　　Yes ☐　No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
　　Yes ☐　No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
　　Yes ☐　No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
　　Yes ☐　No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Security Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All Other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check appropriate category)*

I, William J. Taylor_____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE:  12/09/2015 _____ _____　　40794 PA
　　　　　　　　　　Attorney-at-Law　　　　　　　　　Attorney I.D. #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  12/09/2015 _____ _____　　40794 PA
　　　　　　　　　　Attorney-at-Law　　　　　　　　　Attorney I.D. #

CIV. 609 (5/2012)

16347925v.1

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  850 Clinton Square, Rochester, NY 14604

Address of Defendant:  9755 Dogwood Road, Suite 105, Roswell, GA 30075

Place of Accident, Incident or Transaction:  Levittown, Bucks County, PA
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).      Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?      Yes ☐   No ☒

*RELATED CASE IF ANY:*

Case Number:  N/A _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Security Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All Other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check appropriate category)*

I,  William J. Taylor _____ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE:  12/09/2015 _____   _____ Attorney-at-Law      40794 PA _____ Attorney I.D. #

NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  12/09/2015 _____   _____ Attorney-at-Law      40794 PA _____ Attorney I.D. #

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## <u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

Home Properties Racquest Club East, LLC,           :         CIVIL ACTION
                                                   :
                           v.                      :
                                                   :
ACS Partners, LLC,                                 :
                                                   :         NO.
                                                   :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    (  )

(b)   Social Security – Cases requesting review of a decision of the Secretary of Health        (  )
      and Human Services denying plaintiff Social Security Benefits.

(c)   Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d)   Asbestos – Cases involving claims for personal injury or property damage from            (  )
      exposure to asbestos.

(e)   Special Management – Cases that do not fall into tracks (a) through (d) that are          (  )
      commonly referred to as complex and that need special or intense management by
      the court.  (See reverse side of this form for a detailed explanation of special
      management cases.)

(f)   Standard Management -- Cases that do not fall into any one of the other tracks.          (X)

12/09/2015                                                    William J. Taylor, Esquire
**Date**                    **Attorney-at-law**               **Attorney for Plaintiff**

215-864-6305                215-789-7670                      taylorw@whiteandwilliams.com
**Telephone**               **Fax Number**                    **E-mail Address**

(Civ. 660) 10/02

16349336v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOME PROPERTIES RACQUET CLUB EAST, LLC, <br> 850 Clinton Square <br> Rochester, NY 14604 <br><br> Plaintiff, <br><br> v. <br><br> ACS PARTNERS, LLC, <br> 9755 Dogwood Road <br> Suite 105 <br> Roswell, GA 30075, <br><br> Defendant. | CIVIL ACTION <br><br> NO.: |

## **COMPLAINT**

Plaintiff Home Properties Racquet Club East, LLC ("Home Properties") sues defendant ACS Partners, LLC ("ACS") and avers as follows:

### Jurisdiction

1)      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, in that this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### Venue

2)      Venue properly lies in the United States District Court for the Eastern District of Pennsylvania because the contract between the parties which is the subject of this action was to be performed in this District and a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this District.  28 U.S.C. § 1391(b)(2).

16312149v.2

Parties

3)      Plaintiff Home Properties is a New York limited liability company with an address at 850 Clinton Square, Rochester, NY 14604 and is authorized to conduct business in the Commonwealth of Pennsylvania.

4)      Home Properties is the owner and operator of a residential apartment complex known as Racquet Club East Apartments located at 1970 Veterans Highway, Levittown, PA 19056.

5)      Defendant ACS is a Georgia limited liability company with an address at 9755 Dogwood Road, Suite 105, Roswell, GA 30075 and is authorized to conduct business in the Commonwealth of Pennsylvania.

6)      ACS is a general contracting company.

Statement of Facts

7)      On or about July 26, 2013, Building "B" of Home Properties' Racquet Club East Apartments was severely damaged by a fire.

8)      Thereafter, on or about May 19, 2014, Home Properties, as owner, entered into a construction contract (the "Contract") with ACS, as contractor, for the repairs and rebuilding of Building B of the Racquet Club East Apartments (the "Project"). A true and correct copy of the Contract is attached hereto as Exhibit "A."

9)      The lump sum price for the Contract (the "Contract Sum") was $1,908,708.29 (*see* Exhibit "A," p.3). In exchange for the Contract Sum, the parties agreed as follows:

> § 4.6   It is understood that this is a "Turn-Key" Construction Agreement. The Owner is relying upon Contractor's substantial experience in the field of constructing buildings of all types. The Contract Sum is intended to be complete, representing all work required of Contractor as defined in the Contract Documents and herein whether or not indicated on the Architectural Plans.

-2-

*See* Exhibit "A," p. 3, §4.6.

10)    Per the terms of the Contract, ACS' applications for payment were to "be based on the most recent schedule of values submitted by the Contractor" and were required to "show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment." *See* Exhibit "A," p. 4, §§5.1.4 and 5.1.5.

11)    Per the terms of the Contract, ACS' work was required to be substantially completed in 150 days, or by October 16, 2014.  *See* Exhibit "A," p. 2, §3.3.  ACS understood that Home Properties expected to be able to begin leasing apartments in the newly repaired Building B soon after ACS had substantially completed its work.

12)    After the Contract was executed, ACS began its work on the Project.

13)    During the course of ACS' work on the Project, starting on July 24, 2014, ACS submitted eight separate Applications and Certificates for Payment to Home Properties.  A true and correct copy of ACS' eighth Application and Certificate for Payment, dated April 6, 2015, is attached hereto as Exhibit "B."

14)    On its eighth Application and Certificate for Payment, ACS certified that "100.00%" of the Project's work had been completed (including the work for the Project's first three approved change orders), and that ACS was billing for all of the Contract Sum that was still owed on the Contract, less retainage.  *See* Exhibit "B," pp. 1-2.

15)    Specifically, on its eighth Application and Certificate for Payment ACS provided the following express certification:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment *has been completed* in accordance with the Contract Documents, that all payments have been paid by the Owner for Work for which previous Certificates of Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

-3-

*See* Exhibit "B," p. 1 (emphasis added).

16)     The eighth Application and Certificate for Payment, including the certification outlined above, was signed by ACS' representative and notarized.  *See* Exhibit "B," p.1.

17)     The seven prior Applications and Certificates for Payment submitted by ACS to Home Properties on the Project in 2014 and 2015 also contained ACS' certification that the work for which ACS was applying for payment "has been completed."

18)     These seven prior payment applications were also signed and notarized by an ACS representative.

19)     Based upon ACS' certifications as set forth in each of its Applications and Certificates for Payment (including the eight payment application, in which ACS certified that the work was "100.00%" complete), Home Properties has paid ACS 100% of the Contract Sum, less retainage.

20)     Specifically, Home Properties has paid ACS a total of $1,744,594.18 for ACS' eight Applications and Certifications for Payment, which included all base contract work and work under the first three approved change orders.

21)     Despite the certification by ACS on its eighth Application and Certificate for Payment dated April 6, 2015 that the work was 100% complete, Home Properties later learned that, in fact, the work was not 100% complete, and was not even substantially complete, as of that date.

22)     During the course of ACS' work on the Project, the parties also agreed to approximately twenty three (23) change orders for changed and/or additional work.

23)     ACS billed Home Properties for the first three approved change orders as part of its first Application and Certificate for Payment, and certified that 100% of the work associated with these three change orders had been completed.

-4-

24)     Thereafter, ACS billed for the approved change orders separately from its Applications and Certificates for Payment.

25)     ACS represented in each of its change order invoices that 100% of the work associated with these remaining change orders had been completed, and also certified in its eighth Application and Certificate for Payment that 100% of the work associated with these remaining approved change orders had been completed.

26)     ACS billed Home Properties for 100% of the amount for each approved change order, less retainage.

27)     Based upon ACS' representations as set forth in its change order invoices and its certification as set forth in its eighth Application and Certificate for Payment, Home Properties has paid ACS 100% of the amounts for the approved change orders, less retainage.

28)     Specifically, Home Properties has paid ACS a total of $567,535.84 for approved change orders.

29)     Despite ACS' representations on its change order invoices and its certification on its eighth Application and Certificate for Payment dated April 6, 2015 that the approved change order work was 100% complete, Home Properties later learned that, in fact, the change order work was not 100% complete, and much of the change order work had not even been substantially completed by ACS.

30)     Even though the Contract required ACS to substantially complete its work by October 16, 2014, by May of 2015 the work still had not been completed and ACS still remained on the jobsite.

31)     The delays to the substantial completion of the work were caused by ACS and not by Home Properties.

16312149v.2

32)     On or about May 13, 2015, Home Properties terminated the Contract, pursuant to the terms of the Contract.  A true and correct copy of Home Properties' termination letter to ACS is attached hereto as Exhibit "C."

33)     Home Properties learned that although ACS had billed for 100% completion of the base work under the Contract and 100% completion of the work associated with the approved change orders, in fact as of the time of termination ACS had only completed approximately 60% - 70% of the work required under the Contract and under the approved change orders.

34)     Moreover, Home Properties learned that certain of the work performed by ACS prior to the termination was defective and/or not performed in accordance with the contract documents, and had to be repaired or replaced.

35)     Thereafter, Home Properties was forced to hire another contractor to complete ACS' work and to repair or replace ACS' defective work.

36)     The replacement contractor substantially completed the work in November 2015, and the building received its partial Certificate of Occupancy as of November 19, 2015.

37)     Home Properties has incurred substantial costs in paying the replacement contractor to complete ACS' work and to repair or replace ACS' defective work.

38)     Home Properties has also lost substantial rents and other revenue due to the significant delays caused by ACS in performing the work.

<u>Count I – Breach of Contract</u>

39)     Home Properties repeats and re-alleges Paragraphs 1 through 38, above, as though fully set forth herein.

40)     ACS' failure to complete all the work that it billed for under the Contract and the approved change orders constitutes a breach of contract.

41)     ACS' performance of and billing for work that was defective or which failed to conform to the contract documents also constitutes a breach of contract.

42)     ACS' failure to substantially complete the work by the date set forth in the Contract also constitutes a breach of contract.

43)     Home Properties has incurred substantial damages as a result of ACS' various breaches of contract as outlined above, including payments in excess of $500,000.00 made to the replacement contractor to complete, repair and/or replace ACS' work, lost rents in excess of $500,000.00, and other delay-related damages.

44)     Home Properties has made demand upon ACS for the damages which it has incurred as a result of ACS' breaches of contract as outlined above, but ACS has refused Home Properties' demand.

45)     The Contract provides for litigation as the method of binding dispute resolution. The Contract further provides:

> The parties agree that, in the event of a dispute or default under the Contract Documents which results in litigation between the parties, the prevailing party in any such litigation shall be entitled to an award of reasonable attorney's fees.

*See* Exhibit "A," General Conditions, §15.4

46)     Home Properties has incurred substantial attorney's fees as a result of ACS' breaches of contract as outlined above, and is entitled to an award of attorney's fees as well as damages.

WHEREFORE, plaintiff Home Properties Racquet Club East, LLC demands judgment in its favor against defendant ACS Partners, LLC for compensatory damages in an amount in excess of $1 million, plus interest, costs, reasonable attorney's fees, and for such further relief as this Court deems just and proper.

-7-

16312149v.2

Count II – Intentional Misrepresentation

47)   Home Properties repeats and re-alleges Paragraphs 1 through 46, above, as though fully set forth herein.

48)   On its eighth Application and Certificate for Payment, ACS represented to Home Properties that "100.00%" of the Project's work had been completed (including the work for the Project's first three approved change orders).

49)   On its eighth Application and Certificate for Payment ACS also certified to Home Properties that all of the work covered by the application "has been completed." This certification was signed and notarized by an ACS representative.

50)   On the seven prior Applications and Certificates for Payment submitted by ACS to Home Properties, ACS also certified to Home Properties that all of the work covered by each application "has been completed." These certifications were also signed and notarized by an ACS representative.

51)   ACS also represented to Home Properties in each of its change order invoices that 100% of the work associated with the change orders had been completed, and also certified to Home Properties in its eighth Application and Certificate for Payment that 100% of the work associated with the approved change orders had been completed.

52)   ACS' representations and certifications to Home Properties that 100% of the work under the Contract and under the approved change orders had been completed were material to Home Properties' decision to pay the ACS payment applications and change order invoices.

53)   ACS' representations and certifications to Home Properties that 100% of the work under the Contract and under the approved change orders had been completed were false.

54)     In reality, only about 60%-70% of the work under the Contract and under the approved change orders had been completed by ACS as of the time that the Contract was terminated.

55)     ACS knew that, or recklessly disregarded the fact that, its representations and certifications to Home Properties that 100% of the work under the Contract and under the approved change orders had been completed were false.

56)     ACS' misrepresentations as outlined above were made intentionally in order to mislead Home Properties as to the extent of the work that had actually been completed and to induce Home Properties into paying ACS' payment applications and change order invoices.

57)     Home Properties relied upon ACS' intentional misrepresentations and certifications in paying ACS the full amount of the Contract Sum (less retainage) and paying ACS the full amount of the approved change orders (less retainage).

58)     As owner, Home Properties' reliance upon the intentional misrepresentations and certifications of ACS, its general contractor, was justified.  In fact, in the Contract the parties expressly noted that in regard to the Project Home Properties was relying upon ACS' expertise in building construction. *See* Exhibit "A," p. 3, §4.6.

59)     Home Properties has been damaged by ACS' intentional misrepresentations and certifications because it has paid ACS the full amount of the Contract Sum (less retainage) and the full amount of the approved change orders (less retainage), even though substantially less than 100% of the work under the Contract and under the approved change orders had been completed and Home Properties then had to pay the replacement contractor to complete ACS' work.

60)    ACS' numerous and repeated intentional misrepresentations to Home Properties were willfully and recklessly made with malice against Home Properties.

WHEREFORE, plaintiff Home Properties Racquet Club East, LLC demands judgment in its favor against defendant ACS Partners, LLC for compensatory damages in an amount in excess of $1 million, plus punitive damages, interest, costs, reasonable attorney's fees, and for such further relief as this Court deems just and proper.

<u>Count III – Negligent Misrepresentation</u>

61)    Home Properties repeats and re-alleges Paragraphs 1 through 60, above, as though fully set forth herein.

62)    As set forth above, ACS misrepresented to Home Properties that 100% of the work under the Contract and under the approved change orders had been completed.

63)    Even if ACS did not know that its representations to Home Properties about the extent of the work that had been completed were false, as the general contractor on the Project it ought to have known about the extent of the work that had actually been completed on the Project and ought to have known that substantially less than 100% of the work under the Contract and under the approved change orders had been completed.

64)    In making its representations to Home Properties about the extent of the work that had been completed on the Project, ACS failed to make a reasonable investigation of the truth of its representations.

65)    ACS' false representations to Home Properties about the extent of the work that had been completed on the Project were made negligently.

16312149v.2

66)     ACS made its negligent misrepresentations to Home Properties about the extent of the work that had been completed in order to induce Home Properties to pay its payment applications and change order invoices.

67)     Home Properties justifiably relied upon ACS' negligent misrepresentations in paying ACS the full amount of the Contract Sum (less retainage) and the full amount of the approved change orders (less retainage).

68)     Home Properties has been damaged by ACS' negligent misrepresentations because it has paid ACS the full amount of the Contract Sum (less retainage) and the full amount of the approved change orders (less retainage), even though substantially less than 100% of the work under the Contract and under the approved change orders has been completed and Home Properties then had to pay the replacement contractor to complete ACS' work.

WHEREFORE, plaintiff Home Properties Racquet Club East, LLC demands judgment in its favor against defendant ACS Partners, LLC for compensatory damages in an amount in excess of $1 million, plus interest, costs, reasonable attorney's fees, and for such further relief as this Court deems just and proper.

Dated:  December 9, 2015

WHITE AND WILLIAMS LLP

By: _____
    William J. Taylor, Esquire
    PA ID No. 40794
    1650 Market Street
    One Liberty Place, Suite 1800
    Philadelphia, PA 19103-7395
    215-864-6305
    215-789-7670 (fax)
    *taylorw@whiteandwilliams.com*

*Attorneys for Plaintiff Home Properties*
*Racquet Club East, LLC*

-11-

# EXHIBIT "A"

16312149v.2

# ⚜ **AIA**® Document A101™ – 2007

## *Standard Form of Agreement Between Owner and Contractor* where the basis of payment is a Stipulated Sum

**AGREEMENT** made as of the <u>Nineteenth</u> day of <u>May</u> in the year <u>Two Thousand Fourteen</u>
*(In words, indicate day, month and ~~year.)~~year)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

<u>Home Properties Racquet Club East, LLC</u>
<u>1970 Veterans Highway</u>
<u>Levittown, PA 19056</u>
<u>Telephone Number: 215-943-1600</u>
<u>Fax Number: 215-943-8199</u>

and the Contractor:
*(Name, legal status, address and other information)*

<u>ACS Partners, LLC</u>
<u>9755 Dogwood Rd Suite 105</u>
<u>Roswell, GA 30075</u>
<u>Telephone Number: 404-250-6262</u>
<u>Fax Number: 404-250-6264</u>

for the following Project:
*(Name, location and detailed description)*

<u>Racquet Club B Building Reconstruction</u>
<u>1970 Veterans Highway</u>
<u>Levittown, PA 19056</u>
<u>Rebuild of B bldg as a result of a fire in 8/2013</u>

The Architect:
*(Name, legal status, address and other information)*

<u>JAS Architects, LLC</u>
<u>632 Benson St</u>
<u>Philadelphia, PA 19111</u>
<u>Telephone Number: 215-554-0440</u>

The Owner and Contractor agree as follows.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                          (1684888120)

1

TABLE OF ARTICLES

1    THE CONTRACT DOCUMENTS

2    THE WORK OF THIS CONTRACT

3    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4    CONTRACT SUM

5    PAYMENTS

6    DISPUTE RESOLUTION

7    TERMINATION OR SUSPENSION

8    MISCELLANEOUS PROVISIONS

9    ENUMERATION OF CONTRACT DOCUMENTS

10   INSURANCE AND BONDS

**ARTICLE 1   THE CONTRACT DOCUMENTS**
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

**ARTICLE 2   THE WORK OF THIS CONTRACT**
The Contractor shall fully execute the Work described in the Contract ~~Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.~~Documents.

**ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**
**§ 3.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

**§ 3.2** The Contract Time shall be measured from the date of commencement.

**§ 3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than <u>One hundred fifty</u> ( <u>150</u> ) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                      (1684888120)
Init.

/

2

| Portion of Work | Substantial Completion Date |
|---|---|

~~, subject to adjustments of this Contract Time as provided in the Contract Documents.~~
*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4   CONTRACT SUM

**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be <u>One Million Nine Hundred Eight Thousand Seven Hundred Eight Dollars and Twenty-nine Cents</u> ($ <u>1,908,708.29</u> ), subject to additions and deductions as ~~provided in the Contract Documents.~~<u>may be agreed upon in writing.</u>

**§ 4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

**§ 4.3** Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit (~~$0.00~~)(<u>$ 0.00</u>) |
|---|---|---|

**§ 4.4** Allowances included in the Contract ~~Sum,~~ <u>Sum set forth in Subsection 4.1 above are,</u> if any:
*(Identify allowance and state exclusions, if any, from the allowance ~~price.)~~<u>price and state whether they include labor, materials or both.)</u>*

| Item | Price |
|---|---|

**§ 4.5** <u>The Contractor and Owner will endeavor to define the scope and pricing of all Allowances noted in the attached Bid Assumptions prior to executing the Contract.  Should any of the Allowance items costs more or less than the Allowance Amount noted in the Bid Assumptions, the Contract Sum will be correspondingly adjusted by the difference between the amount of the Allowance and the Actual Cost.  The General Conditions will not be increased or decreased for the Allowance Adjustments.  Change Orders will include a mutually agreeable General Conditions Adjustment.</u>

**§ 4.6**    <u>It is understood that this is a "Turn-Key" Construction Agreement.  The Owner is relying upon Contractor's substantial experience in the field of constructing buildings of all types.  The Contract Sum is intended to be complete, representing all work required of Contractor as defined in the Contract Documents and herein whether or not indicated on the Architectural Plans.</u>

## ARTICLE 5   PAYMENTS
### § 5.1 PROGRESS PAYMENTS
**§ 5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents. <u>The Contractor shall, before receiving its progress payments, supply all supporting documentation.  In addition, all documents, in addition to being submitted to the Architect, shall be submitted to the Owner.</u>

Init.

/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                   (1684888120)

3

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§ 5.1.3** Provided that an Application for Payment is ~~received~~ approved by the Architect not later than the fifth day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the fifth day of the following month. If an Application for Payment is received by the ~~Architect~~ Owner after the application date fixed above, payment shall be made by the Owner not later than ~~( ) days after the Architect receives the Application for Payment.~~ thirty ( 30 ) days after the Owner receives the Application for Payment. Approved Applications for Payment shall be made within 30 days after completion and inspection of all specified work.  Applications for Payment must be in writing, approved by the Architect, and be delivered to the office of the Owner.
*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 5.1.5** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**§ 5.1.5.1** In addition to other required items, each Application for Payment shall be accompanied by the following, all in form and substance satisfactory to the Owner and in compliance with applicable statues of the state where the project is located:

    (i) A current Sworn Statement from the Contractor setting forth all Subcontractors and any material suppliers with whom the Contractor has subcontracted, the amount of each such subcontract, the amount requested for any Subcontractor or material supplier in the application for payment, and the amount to be paid to the Contractor from such progress payment, together with a current, duly executed waiver of mechanics' and material supplier's liens from the Contractor establishing receipt of payment or satisfaction of the payment required by the Contractor in the current Application for payment.

    (ii) Commencing with the second (2nd) Application for Payment submitted by the Contractor, duly executed so-called "after-the-fact" waivers of mechanics' and material suppliers liens from all Subcontractors, material suppliers, and, where appropriate, lower tier subcontractors, establishing receipt of payment or satisfaction of payment of all amounts requested on behalf of all such entities and disbursed prior to submittal by the contractor of the current Application for Payment, plus sworn statements from all Subcontractors, material supplies, and, where appropriate, lower tier subcontractors, covering all amounts described in this clause (ii) of Subsection 5.1.5.1.

    (iii) Such other information, documentation, and materials as the Owner, the Architect, or the title insurer may require, including any conditions such as obtaining a certificate of occupancy that is required before final payment is made.

**§ 5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of Ten percent ( ~~%~~ ). 10% ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™ 2007, General Conditions of the Contract for Construction;

    .2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:** (1684888120)

advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of Ten percent ( %);10% );

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

**§ 5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1 Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

**§ 5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

Balance of retainage to be released not more than 30 days after final completion, acceptance by Owner, inspection and acceptance by all applicable governmental authorities, and delivery by the Contractor to Owner of all final documents and warranties.

**§ 5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 5.2 FINAL PAYMENT**
**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment; and

.2 a final Certificate for Payment has been issued by the Architect.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

The Owner's final payment to the Contractor shall be made no later than 30 days after final completion, acceptance by Owner, inspection and acceptance by all applicable governmental authorities, and delivery by the Contractor to Owner of all final documents and warranties.

**ARTICLE 6   DISPUTE RESOLUTION**
**§ 6.1** ~~INITIAL DECISION MAKER~~
~~The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.~~
~~*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*~~

[Intentionally Omitted]

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                  (1684888120)

§ 6.2 ~~BINDING  DISPUTE  RESOLUTION~~DISPUTE  RESOLUTION
~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the
method of binding dispute resolution shall be as follows:~~
~~(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below,
or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be
resolved by litigation in a court of competent jurisdiction.)~~

> ~~[   ]      Arbitration pursuant to Section 15.4 of AIA Document A201–2007~~

> ~~[   ]      Litigation in a court of competent jurisdiction~~

> ~~[   ]      Other (Specify)~~

If a claim arises, the parties shall utilize good faith reasonable efforts to resolve the Claim among themselves through
direct discussions between the parties' representatives who shall have the authority to settle the Claim.  If the parties'
representatives are unable to resolve the Claim, then the parties shall attempt to settle the Claim through discussions
between senior executives of the parties who shall have the authority to settle the Claim.  If the parties cannot resolve
the Claim through direct discussions, if both parties agree, the Claim shall be submitted to mediation. If the Claim
cannot be resolved through mediation, the parties shall submit the Claim to litigation.

## ARTICLE 7   TERMINATION OR SUSPENSION
§ 7.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document
A201–2007.

§ 7.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

## ARTICLE 8   MISCELLANEOUS PROVISIONS
§ 8.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract
Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract
Documents.

§ 8.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated
below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
(Insert rate of interest agreed upon, if any.)

~~%~~1% per month

§ 8.3 The Owner's representative:
(Name, address and other information)

Michael N. DiChiacchio
101 Lindenwood Dr Suite 120
Malvern, PA 19355
Telephone Number: 610-647-1990
Fax Number: 610-647-1998
Mobile Number: 610-331-8279
Email Address: michaedi@homeproperties.com

§ 8.4 The Contractor's representative:
(Name, address and other information)

Jody Glover
9755 Dogwood Rd Suite 105
Roswell, GA 30075
Telephone Number: 404-250-6262
Fax Number: 404-250-6264
Mobile Number: 404-667-3381

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law.** This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires
on 06/26/2014, and is not for resale.
User Notes:                                                                                                    (1684888120)

**§ 8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 8.6** Other provisions:


**ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS**
**§ 9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 9.1.1** The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and ~~Contractor.~~Contractor, as modified.

**§ 9.1.2** The General Conditions are Owner's modified form of the AIA Document A201–2007, General Conditions of the Contract for ~~Construction.~~Construction, receipt of which, and the terms of which, as modified, are hereby acknowledged and agreed to by Owner and Contractor.

**§ 9.1.3** The Supplementary and other Conditions of the ~~Contract:~~Contract are those contained in the Project Manual dated _____ and are as follows::

| Document | Title | Date | Pages |
|----------|-------|------|-------|
| Project Proposal | ACS Partners,LLC  Bid | 7/26/2013 | Three |

**§ 9.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
Title of Specifications Exhibit:

| Section | Title | Date | Pages |
|---------|-------|------|-------|
|  |  |  |  |

**§ 9.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Title of Drawings exhibit:

| Number | Title | Date |
|--------|-------|------|
| CS-1.00 through S2.00 | Architectural Dwgs | 11/8/2013 |
| E-1 through M-5 | Electrical & Mechanical | 11/8/2013 |
| P-1 Through P-6 | Plumbing | 11/8/2013 |

**§ 9.1.6** The Addenda, if any:

| Number | Date | Pages |
|--------|------|-------|
|  |  |  |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

**§ 9.1.7** Additional documents, if any, forming part of the Contract Documents:

    .1    AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                          (1684888120)

.2   Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

## ARTICLE 10   INSURANCE AND BONDS

The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

| Type of insurance or bond | Limit of liability or bond amount ($0.00)($ 0.00) |
|---|---|

The insurance required by this Article 10 and Subsection 11.1.1 of AIA Document A201-2007 shall include Operations and Premises Liability, Independent Contractor's Protective Liability, Owner's Protective Liability, Personal Injury Liability, Broad Form Property Damage Liability endorsement, Explosion, Collapse and Underground Damage Liability endorsement, and Contractual Liability (applicable to the Contractor's obligations under Section 3.18) insurance, and shall be written on an occurrence basis for not less than the following limits of liability, or any limits required by law, whichever is greater:

a.   Workmen's Compensation Insurance shall be written for not less than the statutory limits and shall include Employer's Liability Insurance at a limit of not less than One Million Dollars ($1,000,000.00);

b.   Bodily injury and personal injury shall be insured at a limit of not less than One Million Dollars ($1,000,000.00) for each occurrence and Two Million Dollars ($2,000,000.00) total aggregate liability;

c.   Property damage shall be insured at a limit of not less than One Million Dollars ($1,000,000.00) for each occurrence and Two Million Dollars ($2,000,000.00) total aggregate liability; and

d.   Comprehensive Automobile Liability Insurance shall be acquired by the Contractor and maintained throughout the term of this Agreement, to cover owned automobiles, automobiles under long-term lease, hired automobiles, employers' non-ownership liability, medical payments and uninsured motorists. The limits of liability shall be no less than:

   i.   One Million Dollars ($1,000,000.00) for each person and Two Million Dollars ($2,000,000.00) for each occurrence for bodily injury and personal injury; and

   ii.   Five Hundred Thousand Dollars ($500,000.00) for each occurrence for property damage.

e.   Owners' and Contractors' Protective Liability Coverage in addition to, and not in lieu of, the coverages set forth above at a limit of not less than Two Million Dollars ($2,000,000 for each occurrence and Six Million Dollars ($6,000,000) total aggregate liability.

The above policies for Public Liability and Property Damage Insurance must be so written as to include Contingent Property Damage Insurance to protect the Owner and Contractor against claims arising from the operations of Subcontractors. Such policies shall include protection against all contingencies likely to arise on this project including liability arising from collapse and explosion hazard; for underground hazard connected with wrecking, demolition or shoring of buildings or structures, and/or from any excavation work necessary for the building proper or trenching for underground service.

Contractor shall require Subcontractors to provide Workmen's Compensation, Liability and Comprehensive Automobile Liability Insurance with the same minimum limits set forth above. All Contractor's and Subcontractor's insurance policies shall name the Owner and its representatives as an additional insured.

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                           (1684888120)

Init.

/

The Contractor shall provide all additional insurance necessary to insure the materials and equipment against loss or damage. The insurance shall cover the materials and equipment while stored at the approved site, while in transit to the jobsite, while being off-loaded at the site and until the materials and equipment is incorporated into the Work and accepted by Owner.

This Agreement entered into as of the day and year first written above.

–See attached digital signatures page–

OWNER *(Signature)*

Michael N. DiChiacchio, Senior Construction Manager

*(Printed name and title)*        *Regional Property Manager*

–See attached digital signatures page–

CONTRACTOR *(Signature)*

Jody Glover, Director of national Accounts

*(Printed name and title)*

*Vice President*

NOTE TO ALL PARTIES: If the total payment to be made under this contract exceeds $10,000, this contract must be signed by a Construction Manager or Regional Vice President of Home Properties, L.P., in addition to the Regional Property Manager.

SR CONSTR. MGR        By: _____, (Construction Manager/Vice President

Michael N. DiChiacchio

Init.

*I*

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125838_1 which expires on 05/26/2014, and is not for resale.
User Notes:                                                                                              (1684888120)

9

## Digital Signatures Page



Shai
Schlusselber
g

Digitally signed by Shai
Schlusselberg
DN: cn=Shai Schlusselberg,
o=ACS Partners, LLC, ou,
email=shai@acspartnersllc.com,
c=US
Date: 2014.05.19 16:23:34 -04'00'

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law. This document was produced by AIA software at 10:16:05 on 05/19/2014 under Order No.6950126839_1 which expires
on 06/26/2014, and is not for resale.
User Notes:                                                                                                    (1684888120)

10

Bid Assist Form                     For Discussion Purposes Only                                          Page 1 of 3

**Project Name:** Home Properties - Racquet Club East                                    Date of Loss: 07/26/13
**Address:** 1970 Veterans Hwy Levittown, PA 19056                                        Cause of Loss: Fire
**JSH Project Number:** 0813015

### Schedule: Bid Assist Document

All Bidders to supply all items highlighted in "Green" as shown to the right of this comment:
All bids are to be submitted by 5:00PM EST Friday 03/07/2014 via email to the following email addresses (brettkl@homeproperties.com, michaedi@homeproperties.com) Home
Properties is anticipated to award Project on 3/14/14

Contractor: AGSI PARTNERS, LLC
Representative: JODY GLOVER
Email: jody@agspartners1.com
Phone #: 404 667 8388
PA License #: #/A
Days to Mobilize Upon Acceptance of Bid: (calendar days) 10 (TEN)
Days needed to complete scope of Work listed below: (calendar days) (awarded contractor will be required to supply a detailed construction schedule) JSH ONE HUNDRED FIFTY

| Ref# | Trade/Category | Scope of Work/Description | Unit Price | Quantity | UOM | Subtotal |
|---|---|---|---|---|---|---|
| 1 | Appliances | | | | | |
| 2 | Appliances | Dishwasher - *labor to install only - materials purchased by Owner* | $83.76 | 43.00 | ea | $3,601.68 |
| 3 | Appliances | Microwave oven - over range w/built-in hood - *labor to install only - materials purchased by Owner* | $124.56 | 43.00 | ea | $5,356.08 |
| 4 | Appliances | Refrigerator - top freezer - 14 to 18 cf - *labor to install only - materials purchased by Owner* | $13.95 | 43.00 | ea | $599.85 |
| 5 | Appliances | Range - freestanding - gas - *labor to install only - materials purchased by Owner* | $111.68 | 43.00 | ea | $4,802.24 |
| 6 | Appliances | Total for Ref#'s 1-5 | | | | $14,359.85 |
| 7 | Cabinetry | | | | | |
| 8 | Cabinetry | Countertop - flat laid plastic laminate | $11.29 | 559.00 | lf | $6,311.11 |
| 9 | Cabinetry | 4" backsplash for flat laid countertop | $2.54 | 559.00 | lf | $1,419.86 |
| 10 | Cabinetry | Cabinetry - lower (base) units - *labor to install only - materials purchased by Owner* | $32.75 | 473.00 | lf | $15,490.75 |
| 11 | Cabinetry | Medicine cabinet | $157.15 | 48.00 | ea | $7,543.20 |
| 12 | Cabinetry | Toe kick - pre-finished wood - 1/2" - *labor to install only - materials purchased by Owner* | $4.06 | 688.00 | lf | $2,793.28 |
| 13 | Cabinetry | Cabinetry - upper (wall) units - *labor to install only - materials purchased by Owner* | $32.75 | 774.00 | lf | $25,348.50 |
| 14 | Cabinetry | Vanity - *labor to install only - materials purchased by Owner* | $32.75 | 120.00 | lf | $3,930.00 |
| 15 | Cabinetry | Total for Ref#'s 7-14 | | | | $62,836.70 |
| 16 | Doors | | | | | |
| 17 | Doors | Interior door - Colonist - pre-hung unit - *labor to install only - materials purchased by Owner* | $48.64 | 189.00 | ea | $9,192.96 |
| 18 | Doors | Exterior door - metal - insulated- Includes- Kick plate, lockset, numbers & mail drop - *labor to install only - materials purchased by Owner* | $71.83 | 84.00 | ea | $6,033.72 |
| 19 | Doors | Total for Ref#'s 16-18 | | | | $15,226.68 |
| 20 | Drywall | | | | | |
| 21 | Drywall | 5/8" drywall - hung, taped, floated, ready for paint | $1.94 | 155,733.92 | sf | $302,123.80 |
| 22 | Drywall | Total for Ref#'s 20-21 | | | | $302,123.80 |
| 23 | Eletrical | | | | | |
| 24 | Eletrical | Bathroom ventilation fan | $76.09 | 91.00 | ea | $6,924.19 |
| 25 | Eletrical | Breaker panel - 100 amp w/arc fault breakers | $889.39 | 45.00 | ea | $40,022.55 |
| 26 | Eletrical | Door chime | $104.86 | 45.00 | ea | $4,718.70 |
| 27 | Eletrical | Smoke / Carbon monoxide detector | $103.86 | 45.00 | ea | $4,673.70 |
| 28 | Eletrical | Ground fault interrupter (GFI) outlet | $22.98 | 134.00 | ea | $3,079.32 |
| 29 | Eletrical | Outlet | $10.30 | 1,197.00 | ea | $12,329.10 |
| 30 | Eletrical | Switch | $10.33 | 232.00 | ea | $2,396.56 |
| 31 | Eletrical | Rewire - average residence - copper wiring | $3.54 | 35,677.74 | sf | $125,942.40 |
| 32 | Eletrical | Trunk cable - aluminum - 4 wire 4/0 | $9.96 | 10,125.00 | lf | $100,845.00 |
| 33 | Eletrical | Total for Ref#'s 23-33 (no Ref#29) | | | | $300,931.52 |
| 34 | Floor Covering Carpet | | | | | |
| 35 | Floor Covering Carpet | | | | | |
| 36 | Floor Covering Carpet | Carpet - *labor to install only - materials purchased by Owner* | $0.68 | 32,040.00 | sf | $21,787.20 |
| 37 | Floor Covering Carpet | Carpet pad - *labor to install only - materials purchased by Owner* | $0.30 | 29,355.70 | sf | $2,935.57 |
| 38 | Floor Covering Carpet | Total for Ref#'s 35-37 | | | | $24,722.77 |
| 39 | Floor Covering Tile | | | | | |
| 40 | Floor Covering Tile | Tile floor covering - *labor to install only - materials purchased by Owner* | $3.85 | 1,387.86 | sf | $5,343.26 |
| 41 | Floor Covering Tile | Tile base - *labor to install only - materials purchased by Owner* | $7.55 | 872.72 | lf | $6,589.04 |
| 42 | Floor Covering Tile | Total for Ref#'s 39-41 | | | | $11,932.30 |
| 43 | Floor Covering Vinyl | | | | | |

Copy of Racquet Club - Bid Assist Doc - supplied rev4 30 14

Bid Assist Form                                           For Discussion Purposes Only                                           Page 2 of 3

**Project Name:** Home Properties - Racquet Club East                                           Date of Loss: 07/26/13
**Address:** 1970 Veterans Hwy Levittown, PA 19056                                           Cause of Loss: Fire
**JSH Project Number:** 0813015

### Schedule: Bid Assist Document

| | | | | | | |
|---|---|---|---|---|---|---|
| 44 | Floor Covering Vinyl | Vinyl tile - *labor to install only - materials purchased by Owner* | | 3,835.33 | sf | $4,602.40 |
| 45 | Floor Covering Vinyl | Total for Ref#'s 43-44 | | | | $4,602.40 |
| 46 | Finished Carpentry | | | | | |
| 47 | Finished Carpentry | Baseboard - 3 1/4" | | 12,472.52 | lf | $33,675.80 |
| 48 | Finished Carpentry | Closet shelf and rod package | | 982.00 | lf | $16,998.42 |
| 49 | Finished Carpentry | Handrail - round / oval - wall mounted | | 350.00 | lf | $3,076.50 |
| 50 | Finished Carpentry | Window sill | | 544.00 | lf | $1,441.60 |
| 51 | Finished Carpentry | Total for Ref#'s 46-50 | | | | $55,192.32 |
| 52 | Finished Hardware | | | | | |
| 53 | Finished Hardware | Bath accessory | | 144.00 | ea | $4,086.72 |
| 54 | Finished Hardware | Door knob - Interior | | 189.00 | ea | $8,559.81 |
| 55 | Finished Hardware | Shower curtain rod | | 48.00 | ea | $1,364.16 |
| 56 | Finished Hardware | Total for Ref#'s 52-55 | | | | $14,010.69 |
| 57 | Framing | | | | | |
| 58 | Framing | Stud wall - 2"x4" - 16"oc | | 60,000.00 | sf | $100,200.00 |
| 59 | Framing | Box framing for duct system | | 1,625.00 | lf | $12,252.50 |
| 60 | Framing | Total for Ref#'s 57-59 | | | | $112,452.50 |
| 61 | HVAC - Mechanical | | | | | |
| 63 | HVAC - Mechanical | Bath fan vent - complete - includes flue | | 48.00 | ea | $7,060.32 |
| 64 | HVAC - Mechanical | Heating and cooling system complete - per unit - includes equipment, ductwork, registers, vent piping & cap | | 44.00 | ea | $289,887.16 |
| 66 | HVAC - Mechanical | Thermostat | | 44.00 | ea | $2,284.04 |
| 69 | HVAC - Mechanical | Total for Ref#'s 61-68 (no Ref#62, 65, 67, 68) | | | | $308,231.52 |
| 70 | Insulation | | | | | |
| 71 | Insulation | Batt insulation - 10" - R30 - paper faced | | 34,881.29 | sf | $50,926.68 |
| 72 | Insulation | Batt insulation - 4" - R13 - paper faced | | 54,316.83 | sf | $41,280.79 |
| 73 | Insulation | Total for Ref#'s 70-72 | | | | $92,207.47 |
| 74 | Generals | | | | | |
| 75 | Generals | General Labor - All additional labor needed to complete project (post construction clean-up, material handling, ect..) | | 1.00 | ls | $0.00 |
| 76 | Generals | All Supervision and General Conditions required to complete project (Labor, dumpsters, temp. fencing, site office, ect...) | | 1.00 | ls | $0.00 |
| 77 | Labor | Total for Ref#'s 74-76 | | | | $0.00 |
| 78 | Light Fixtures | | | | | |
| 79 | Light Fixtures | Light fixture - *labor to install only - materials purchased by Owner* | | 268.00 | ea | $6,383.76 |
| 81 | Light Fixtures | Hanging light fixture - *labor to install only - materials purchased by Owner* | | 41.00 | ea | $1,331.27 |
| 82 | Light Fixtures | Recessed light fixture - *labor to install only - materials purchased by Owner* | | 263.00 | ea | $14,975.22 |
| 83 | Light Fixtures | Total for Ref#'s 78-82 (no Ref#80) | | | | $22,690.25 |
| 84 | Landscaping | | | | | |
| 85 | Landscaping | By Owner | | | | |
| 86 | Landscaping | Total for Ref#'s 84-85 | | | | |
| 87 | Marble - Cultured | | | | | |
| 88 | Marble - Cultured | Vanity top - one sink - cultured marble | | 120.00 | lf | $2,644.80 |
| 89 | Marble - Cultured | Total for Ref#'s 87-88 | | | | $2,644.80 |
| 90 | Mirrors | | | | | |
| 91 | Mirrors | Mirror - 1/4" plate glass | | 480.00 | sf | $5,779.20 |
| 92 | Mirrors | Total for Ref#'s 90-91 | | | | $5,779.20 |
| 93 | Metal | | | | | |
| 94 | Metal | Handrail - Aluminum - Floor Mounted | | 320.00 | lf | $24,131.20 |
| 95 | Metal | Total for Ref#'s 93-94 | | | | $24,131.20 |
| 96 | Plumbing | | | | | |
| 97 | Plumbing | Sink faucet - Kitchen - *labor to install only - materials purchased by Owner* | | 43.00 | ea | $2,161.18 |
| 98 | Plumbing | Sink faucet - Bathroom - *labor to install only - materials purchased by Owner* | | 48.00 | ea | $2,412.48 |
| 99 | Plumbing | P-trap assembly - ABS (plastic) - *labor to install only - materials purchased by Owner* | | 139.00 | ea | $4,981.76 |
| 100 | Plumbing | Rough in plumbing - per fixture - includes supply main(s) - *labor to install only - materials purchased by Owner* | | 317.00 | ea | $95,439.19 |
| 101 | Plumbing | Angle stop - *labor to install only - materials purchased by Owner* | | 273.00 | ea | $4,348.89 |
| 102 | Plumbing | Toilet- *labor to install only - materials purchased by Owner* | | 48.00 | ea | $6,432.96 |
| 103 | Plumbing | Tub/shower faucet- *labor to install only - materials purchased by Owner* | | 48.00 | ea | $5,078.88 |
| 104 | Plumbing | Bathtub- *labor to install only - materials purchased by Owner* | | 48.00 | ea | $13,762.08 |
| 105 | Plumbing | Total for Ref#'s 96-104 | | | | $134,617.42 |
| 106 | Paint | | | | | |
| 107 | Paint | Paint baseboard - two coats | | 12,472.52 | lf | $10,601.64 |

Copy of Racquet Club - Bid Assist Doc - supplied rev4 30 14

Bid Assist Form                                    For Discussion Purposes Only                                    Page 3 of 3

**Project Name:** Home Properties - Racquet Club East                                    Date of Loss: 07/26/13
**Address:** 1970 Veterans Hwy Levittown, PA 19056                                    Cause of Loss: Fire
**JSH Project Number:** 0813015

### Schedule: Bid Assist Document

| # | Trade | Description | Unit Price | Quantity* | Unit | Total |
|---|---|---|---|---|---|---|
| 108 | Paint | Seal & paint closet shelving - single shelf | | 213.00 | ea | $6,464.55 |
| 109 | Paint | Paint door slab only - 2 coats (per side) | | 540.00 | ea | $10,416.60 |
| 110 | Paint | Paint door/window trim & jamb - 2 coats (per side) | | 540.00 | ea | $17,895.60 |
| 111 | Paint | Paint surface - two coats | | 145,214.14 | sf | $87,128.48 |
| 112 | Paint | Seal surface w/PVA primer - one coat | | 145,700.14 | sf | $58,280.06 |
| 113 | Paint | Seal & paint window sill | | 544.00 | lf | $832.32 |
| 114 | Paint | Paint stair Stringer - one side | | 600.00 | lf | $1,296.00 |
| 115 | Paint | Seal stud wall for odor control | | 60,000.00 | sf | $32,400.00 |
| 116 | Paint | Total for Ref#'s 106-115 | | | | $225,315.25 |
| 117 | Stairs | | | | | |
| 118 | Stairs | Stairway - 3'6"wide (8'rise plus joist) | | 25.00 | ea | $13,555.25 |
| 119 | Stairs | Total for Ref#'s 117-118 | | | | $13,555.25 |
| 120 | Tile | | | | | |
| 121 | Tile | 1/2" Cement board | | 3,600.00 | sf | $10,188.00 |
| 122 | Tile | Tile tub surround - 60 to 75 SF | | 48.00 | ea | $45,607.68 |
| 123 | Tile | Total for Ref#'s 120-122 | | | | $55,795.68 |
| 124 | Windows - Sliders | | | | | |
| 125 | Windows - Sliders | 10-0 6-8 vinyl sliding patio door | | 45.00 | ea | $66,347.55 |
| 126 | Windows - Sliders | Total for Ref#'s 124-125 | | | | $66,347.55 |
| 127 | Windows - Vinyl | | | | | |
| 128 | Windows - Vinyl | Vinyl window, horizontal sliding, 12-23 sf - High grade | | 136.00 | ea | $39,074.16 |
| 129 | Windows - Vinyl | Total for Ref#'s 127-128 | | | | $39,074.16 |
| 130 | NET TOTAL | Total of all Trades | | | | $1,908,781.29 |
| 131 | Contractor's Fee | Total Overhead and Profit | | $1,908,781.29 | | $0.00 |
| 132 | GROSS TOTAL | | | | | $1,908,781.29 |
| 133 | | Supply total Contracor Fee % to be applied to all Change Orders | | | | |

Notes:     - Unit Price* is to include all applicable Material Sales Tax
            - Unit Price* may be used for Contractor Change Order Requests (CORs)
            - Quantity* is based on J.S. Held estimated calculations.  Contractors are required to verify quantities and change quantities as deemed appropriate
            - Quantity* is deemed to include all scope per Construction Documents unless specifically clarified/excluded by Contractor
            - Quantity* of Windows and Patio Sliders is subject to further review by Owner's representatives

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Jody Glover, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with this certification at 10:16:06 on 05/16/2014 under Order No. 6950125839_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 2007, Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum, as published by the AIA in its software, other than changes shown in the attached final document by underscoring added text and striking over deleted text.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:06 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                    (1684888120)

# ᎪIA® Document A201™ – 2007

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Racquet Club B building reconstruction
1970 Veterans Highway
Levittown, PA 19056

**THE OWNER:**
*(Name, legal status and address)(Name and address)*
Home Properties - Racquet Club East Apartments
1970 Veterans Highway
Levittown, PA 19056

**THE ARCHITECT:**
*(Name, legal status (Name and address)*
JAS Architects, LLC
632 Benson St.
Philadelphia, PA 19111

This document has important
legal consequences. Consultation
with an attorney
is encouraged with respect to
its completion or modification.

TABLE OF ARTICLES

1           GENERAL PROVISIONS

2           OWNER

3           CONTRACTOR

4           ARCHITECT

5           SUBCONTRACTORS

6           CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7           CHANGES IN THE WORK

8           TIME

9           PAYMENTS AND COMPLETION

10          PROTECTION OF PERSONS AND PROPERTY

11          INSURANCE AND BONDS

12          UNCOVERING AND CORRECTION OF WORK

13          MISCELLANEOUS PROVISIONS

14          TERMINATION OR SUSPENSION OF THE CONTRACT

15          CLAIMS AND DISPUTES

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                            (1870219893)

**1**

**INDEX**
~~(Topics and numbers in bold are section headings.)~~
(Numbers and Topics in Bold are Section Headings)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.4.2, ~~13.7,~~ ~~13.7.1,~~ 14.1, 15.2
Addenda
1.1.1, ~~3.11~~13.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, ~~9.7,~~9.7.1, 9.10,
11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10,
4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, ~~13.1,~~13.1.1, 15.3.2, **15.4**
**ARCHITECT**
4
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
~~2.4,~~2.4.1, 3.12.7, 4.1, 4.2, 5.2, ~~6.3,~~6.3.1, 7.1.2, 7.3.7,
7.4, ~~9.2,~~9.2.1, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3,
12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3,
15.2.1
Architect, Limitations of Authority and Responsibility

2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, ~~7.4,~~7.4.1,
9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
~~2.4,~~2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
~~2.4, 3.1.3, 3.5,~~2.4.1, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
~~3.5,~~3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, ~~6.3,~~
6.3.1, 7.3.7, 7.3.9, 8.1.3, 8.3.1, ~~9.2,~~9.2.1, 9.4.1, 9.5,
9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, ~~3.5,~~
3.5.1, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16,
3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5,
15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for**
**Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
~~9.7,~~9.7.1, 11.3.9, 11.3.10, ~~13.1,~~13.1.1, 15.2.5,
15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien

**Init.**

_l_

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires
on 06/26/2014, and is not for resale.
User Notes:                                                                                                               (1870219893)

7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4,** 9.5, 9.6.1, 9.6.6, ~~9.7,~~
~~9.7.1,~~ 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, ~~2.4,~~ ~~2.4.1,~~ 3.4.2, 3.7.4, 3.8.2.3, ~~3.11,~~ ~~3.11.1,~~
3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2,** 7.3.2, 7.3.6, 7.3.9,
7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4,
11.3.9, 12.1.2, 15.1.3
**Change Orders, Definition of**
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, ~~7.4.1,~~ 8.3.1,
9.3.1.1, 11.3.9
**Claims, Definition of**
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, ~~6.3,~~ ~~6.3.1,~~ 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15,**
15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, ~~3.7.4,~~ ~~6.1.1,~~ ~~3.7.4.6.1.1,~~ 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15,** 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1,
15.1.4
**Commencement of the Work, Definition of**
**8.1.2**
**Communications Facilitating Contract**
**Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to

3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2,
13.7
Compliance with Laws
~~1.6,~~ ~~1.6.1,~~ 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4,
10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1,
9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY**
**SEPARATE CONTRACTORS**
1.1.4, 6
**Construction Change Directive, Definition of**
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3,**
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4,** 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract,** Definition of
**1.1.2**
**CONTRACT, TERMINATION OR**
**SUSPENSION OF THE**
5.4.1.1, 11.3.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
<u>Contract Documents, The</u>
<u>1.1.1</u>
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents, Definition of**
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1,** 9.4.2, 9.5.1.4, 9.6.7,
9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum, Definition of**
**9.1**
Contract Time

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                (1870219893)

3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 9.7.1, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**
**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1, 6.1.2**
**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1 14.2.1.1,
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work

2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**
Costs
2.4, 2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.2.1, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.3, 2.4, 3.5, 2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
**Defective Work, Definition of**
**3.5.1**
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 7.4.1, 8.3, 9.5.1, 9.7, 10.3.2, 10.4, 9.7.1, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 6.3.1, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                         (1870219993)

8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, ~~3.5, 3.5.1,~~ 3.8.2, 3.8.3, 3.12, ~~3.13,~~
~~3.13.1,~~ 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2,
9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, ~~3.5,~~
~~3.5.1,~~ 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5,
8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, ~~7.4, 9.5.1, 9.7, 10.3.2,~~
~~10.4,~~ 7.4.1, 9.5.1, 9.7.1, 10.3.2, 10.4.1, 14.3, 15.1.5,
15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(*See* Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
~~12.3,~~ 12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
1
**Governing Law**
13.1
Guarantees (*See* Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
~~3.17, 3.17.1, 3.18,~~ 9.10.2, 10.3.3, 10.3.5, 10.3.6,
11.3.1.2, 11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, ~~11.2,~~ 11.2.1, 11.4,
13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
15.2
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
10.2.8, ~~10.4~~ 10.4.1

Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, **11**
**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
~~9.3.2~~ 9.3.2, 11.4.1.4
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
~~9.9.1,~~ 11.4.1.5
Insurance Companies, Settlement with
~~9.9.1~~ 11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, ~~3.5, 3.5.1,~~ 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, ~~3.13, 3.13.1,~~ 4.1.1, 9.6.4,
9.9.1, 10.2.2, 11.1.1, 11.3, ~~13.1, 13.1.1,~~ 13.4, 13.5.1,
13.5.2, ~~13.6, 13.6.1,~~ 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125039_1 which expires
on 06/26/2014, and is not for resale.
**User Notes:**                                                                                     (1870219893)

Init.

/

5

2.3, 3.2.2, 3.5, 3.12.10, 3.17, 2.3.1, 3.2.2, 3.5.1,
3.12.10, 3.17.1, 3.18.1, 4.2.6, 4.2.7, 4.2.12, 6.2.2,
9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2, 11.2, 11.2.1,
11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.2.1,
9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.7.1, 9.8, 9.9, 9.10,
11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14,
15
**Loss of Use Insurance**
**11.3.3**
Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.5.1, 3.8.2, 3.8.3, 3.12,
3.13, 3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7,
9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1,
14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**,
15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
9.7.1, 10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5, 2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.4, 9.5.1,
9.8.2, 9.9.3, 9.10.4, 12.2.1
Notice
2.2.1, 2.3, 2.4, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9,
5.2.1, 9.7, 9.7.1, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2.1,
13.3, 13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3, 2.4, 2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10,
5.2.1, 9.7, 9.7.1, 9.10, 10.2.2, 10.3, 11.1.3, 11.3.6,
12.2.2.1, **13.3**, 14, 15.2.8, 15.4.1
**Notice of Claims**
3.7.4, 4.5, 10.2.8, **15.1.2**, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2

Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2,
14.3.1
**OWNER**
**2**
**Owner, Definition of**
**2.1.1**
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.2.1, 11.3,
13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 2.3.1, 2.4.1, 3.4.2, 3.8.1, 3.12.10,
3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1,
6.3, 6.3.1, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1,
9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10,
12.2.2, 12.3, 12.3.1, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
**Owner's Loss of Use Insurance**
**11.3.3**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to**
**Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications**
**and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11, 3.17, 4.2.12,
5.3, 11.1, 3.17.1, 4.2.12, 5.3.1
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, 9.2.1, 9.3, 9.4, 9.5, 9.6.3, 9.7, 9.7.1,
9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires
on 06/26/2014, and is not for resale.
User Notes: (1870219893)

4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, ~~9.7,~~ 9.7.1,
9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, ~~12.3,~~
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, 11.4
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8,
14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, 11.4
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data, Definition of**
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project, Definition of** the
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14,
15.2.8, 15.4
Rejection of Work
~~3.5,~~ 3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, ~~3.5,~~ 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Responsibility for Those Performing the Work

3.3.2, 3.18, 4.2.3, ~~5.3,~~ 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field**
**Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples
by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.3, 2.4, ~~3.5,~~ 3.5.1, 3.7.4, 3.15.2, 4.2.6, 4.5, 5.3,
5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2,
12.2.4, **13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, ~~5.3,~~ 5.3.1, **10.1**, 10.2, 10.4
**Samples, Definition of**
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 11.4.7,
12.1.2
**Shop Drawings, Definition of**
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications, Definition of** the
**1.1.6**
~~Specifications~~ Specifications, The
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1

SS

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/28/2014, and is not for resale.
**User Notes:**                                                                                                          (1870219893)

Stored Materials
6.2.1, 9.3.2, 10.2.1.2, ~~10.2.4~~10.2.4, 11.4.1.4
Subcontractor, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 11.4.7, 11.4.8, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, 11.4.5, 11.3.7
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, ~~3.5, 3.5.1,~~ 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 11.4.9, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**

5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, ~~11.4.1,~~ 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, ~~7.4,~~ 7.4.1, **8.3**, 9.5.1, ~~9.7, 10.3.2, 10.4,~~ 9.7.1, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 4.4, 4.5, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 11.4.7, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                     (1870219893)

6.1.1, 11.4.5, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, ~~13.7~~
13.7.1
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2

Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7,
9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3**,
14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
14.3.1, 15.1.2

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 08/26/2014, and is not for resale.
**User Notes:**                                                                                                                    (1870219893)

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK
The term "Work" means the ~~construction~~ construction, renovation and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT
The Project is the _Racquet Club B Building Reconstruction_____ project in Levittown, PA_____. The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

### § 1.1.8 ~~INITIAL DECISION MAKER~~
~~The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.~~ [INTENTIONALLY OMITTED]

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                                     (1870219893)

binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.3 CAPITALIZATION
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

§ 1.4 INTERPRETATION
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
§ 1.5.1 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ 1.5.2 The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

§ 1.6 TRANSMISSION OF DATA IN DIGITAL FORM
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

ARTICLE 2   OWNER
§ 2.1 GENERAL
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
§ 2.2.1 Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                    (1870219893)

Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**§ 2.2.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.2.3** ~~The~~ If necessary to complete the Work, the Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.4** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.2.5** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

### § 2.3 OWNER'S RIGHT TO STOP THE WORK
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or ~~repeatedly~~ fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or ~~entity, except to the extent required by Section 6.1.3.~~entity.

**§ 2.3.1 If Owner, in Owner's sole discretion, believes that it is necessary to suspend the Work for reasons other than Inclement Conditions as described in Subparagraph 8.3.3 below, the Owner may suspend the Work by written notice to the Contractor. In such notice, the Owner shall indicate an estimated time for the duration of Owner's suspension of work. In the event Owner suspends Work for reason other than Inclement Conditions described in Subparagraph 8.3.3 below, the Contractor may remove its equipment from the site if the suspension exceeds 15 calendar days and the Contractor shall be entitled to charge Owner a remobilization fee not to exceed $.00 when the suspension ends and the Contractor continues the Work. In such an Owner suspension, the Contract Time shall be adjusted accordingly for the time of such suspension, however, the Contract Sum shall not be adjusted (except for the remobilization charge set forth above) unless the Owner agrees by written change order. The above provision shall apply solely to an Owner directed suspension and the provisions of Subparagraph 8.3.3 govern delays caused by Inclement Conditions.**

### § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. ~~Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect.~~ If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:** (1870219893)

**12**

## ARTICLE 3    CONTRACTOR
### § 3.1 GENERAL
§ **3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized employee, agent or representative. **No attempt is made within the specifications or working drawings to designate specific responsibilities for any subcontractor. Final responsibility for performance of all Work in a good and workmanlike manner lies with the Contractor, who is the general contractor and who shall be responsible for all the subcontracts and their performance, in accordance with the contract requirements.**

§ **3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

§ **3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

### § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ **3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

§ **3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents. **The Contractor shall be responsible for the accuracy of measurements, elevations, lines and grades of the Work. Do not scale the Drawings. If the Contractor chooses to measure distances by scaling from the Drawings, it is totally at the Contractor's risk and is not considered to be an accurate measurement. The Contractor shall do field work necessary to layout and maintain the Work. No extra charge or compensation will be allowed due to scaling from the Drawings for differences between actual dimensions and the measurements indicated on the Drawings; differences which may be found shall be submitted to the Owner for his consideration before proceeding with the Work.**

§ **3.2.2.1 Prior to commencement of building construction, Contractor shall undertake whatever site investigation it deems prudent. Upon commencement of building construction, the Contractor shall be responsible for determining the conditions of the existing site, including all known or apparent soil and subsurface conditions, existing improvements, paving, utilities and construction, and shall have accounted for such conditions in the preparation of Contractor's bid and shall not be entitled to additional compensation as the result of not being familiar with the existing site conditions, except as noted or excluded elsewhere in the Contract.**

§ **3.2.2.2 The Contractor is responsible for having a thorough knowledge of all Drawings, Specifications, General Conditions, Special Conditions and any other Contract Documents. Failure to acquaint himself with this knowledge does not relieve him of the responsibility of performing his work in a manner acceptable to the Owner. No additional compensation will be allowed because of conditions that occur due to failure by the Contractor to familiarize himself and all workers with this knowledge.**

§ **3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                              (1870219893)

promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

§ 3.2.4 If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections ~~3.2.2~~ 3.2.2, 3.2.2.1, 3.2.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

## § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

§ **3.3.2.1 Contractor shall maintain and keep current as-built drawings on the Project site which accurately reflect any and all changes to the original Drawings and Specifications. Final as-built drawings shall be submitted in triplicate to the Owner before final payment will become due.**

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ **3.3.4   If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed. No inspection performed or failed to be performed by the Owner or Owner's agent or representative hereunder shall be a waiver of any of the Contractor's obligations hereunder or be construed as an approval or acceptance of the Work or any part thereof that does not comply with the obligations of the Contract Documents; if Owner's agent has inspected Work and found it to be satisfactory, Owner shall not reject such inspection unless the Work does not comply with the obligations of the Contract Documents.**

§ **3.3.5  The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the Work and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project.  In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum nor in any additional time to complete the Work, unless specifically approved in writing by Owner, which approval shall be in Owner's sole discretion.**

## § 3.4 LABOR AND MATERIALS

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work. **No debts accrued during construction shall**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125639_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                            (1870219893)

**remain unpaid for a period of more than sixty (60) days after satisfactory completion of Work performed, provided Owner has paid Contractor for all sums then due.**

§ **3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

§ **3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

§ **3.5 WARRANTY**
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these ~~requirements may~~ requirements, including substitutions not properly approved and authorized, shall be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the ~~Architect,~~ Architect or Owner, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

§ **3.5.2 All Work performed by Contractor shall be warranted for a period of one year from the date of final completion or such longer period as allowed by law. If, within the warranty period, the Owner finds that warranted Work needs to be repaired or changed because of materials, equipment, or workmanship which are not in accordance with the Contract Documents, he will so inform the Contractor in writing and the Contractor shall promptly and without any additional expense to the Owner:**

1.      **Replace in satisfactory condition all of such warranted Work;**

2.      **Satisfactorily correct all damages to equipment, the site, the building or contents thereof, which is the result of such unsatisfactory warranted Work; and**

3.      **Satisfactorily correct any work, materials, and equipment that are disturbed in fulfilling the warranty, including any disturbed work, materials and equipment that may have been guaranteed under another contract. Should the Contractor fail to proceed promptly in accordance with the warranty, the Owner may have such Work performed at the sole cost and expense of the Contractor.**

§ **3.5.3   The Contractor agrees to assign to the Owner at the time of final completion of the Work any and all manufacturer's warranties relating to materials and labor used in the Work and further agrees to perform the Work in such manner so as to preserve any and all such manufacturer's warranties.**

§ **3.6 TAXES**
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

§ **3.7 ~~PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS~~**
**PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS**
§ **3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

§ **3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                            (1870219893)

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

**§ 3.8 ALLOWANCES**
**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may ~~direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.~~ direct.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,
  .1   ~~Allowances~~ allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
  .2   Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and
  .3   ~~Whenever~~ whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

**§ 3.9 SUPERINTENDENT**
**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through~~ and the Architect the name and qualifications of a proposed superintendent. **The** ~~Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.~~ **superintendent shall devote total and full-time attention to the requirements of the Construction Documents and shall not work on any other project until final completion without Owner's written consent.**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                        (1870219893)

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable ~~and timely~~ objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

**§ 3.9.4 It is hereby agreed between Owner and the Contractor that the Contractor will use reasonable efforts to meet the Contract Substantial Completion Date and will maintain the original management and supervision team to continue their office and jobsite duties through Contract Completion Date and/or any other time the Contractor has any work being performed on the project regardless of the date or condition or project completion. Owner has specifically requested that Contractor include in all subcontracts provision for six (6) day work week whensoever necessitated by weather, material or shortage, delays, job or personnel conflicts, or similar circumstances, all without additional payment for acceleration. Contractor agrees for its own personnel and for applicable subcontractors that six (6) day work week required to meet the agreed construction schedule shall not constitute acceleration or additional cost.**

### § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

### § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

### § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                   (1870219893)

17

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

### § 3.13 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### § 3.14 CUTTING AND PATCHING
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                          (1870219893)

18

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 3.15 CLEANING UP
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

## § 3.16 ACCESS TO WORK
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## § 3.18 INDEMNIFICATION
**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, including loss of use resulting therefrom, unless caused by the negligence of Owner, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that which would otherwise exist as to a party or person described in this Section 3.18.

**§ 3.18.1.1  The Contractor's indemnity obligations under this Paragraph 3.18 shall also specifically include, without limitation, all fines, penalties, damages, liability, costs, expenses (including, without limitation, reasonable attorneys' fees), and punitive damages (if any) arising out of, or in connection with, any (i) violation of or failure to comply with any law, statute, ordinance, rule, regulation, code, or requirement of a public authority that bears upon the performance of the Work by the Contractor, a Subcontractor, or any person or entity for whom either is responsible, (ii) means, methods, procedures, techniques, or sequences of execution or performance of the Work, and (iii) failure to secure and pay for permits, fees, approvals, licenses, and inspections as required under the Contract, or any violation of any permit or other approval of a public authority applicable to the Work, by the Contractor, a Subcontractor, or any person or entity for whom either is responsible.**

**§ 3.18.1.2  The indemnification, defense and hold harmless of Owner by Contractor and any other right of Owner against Contractor shall not be impaired or affected in any way by the failure of Owner to provide Contractor with a copy of a notice to Owner or Mechanic's Lien.  Contractor shall require this language in any contract with all subcontractors.**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                          (1870219893)

§ **3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section ~~3.18.1~~ **3.18.1, 3.18.1.1 and 3.18.1.2** shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

**ARTICLE 4   ARCHITECT**
§ **4.1 GENERAL**
§ **4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

§ **4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

§ **4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

§ **4.2 ADMINISTRATION OF THE CONTRACT**
§ **4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate ~~for~~ For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

§ **4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

§ **4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ **4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION**
Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ **4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ **4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                    (1870219893)

such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10. **Final completion shall be determined by issuance of a Certificate of Occupancy and Owner's and applicable governmental authorities' acceptance of all work (including punchlists) within Contractor's Scope of Work, which shall not be unreasonably withheld by the Owner.**

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 4.2.14 The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

ARTICLE 5   SUBCONTRACTORS
§ 5.1 DEFINITIONS
§ 5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                                     (1870219893)

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

## § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through~~ and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner or the Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Owner or the Architect requires additional time for review. Failure of the Owner or Architect to reply within the ~~14 day~~ 14 day period shall constitute notice of no reasonable objection.

**§ 5.2.1.1 The Contractor and all subcontractors are herby notified that all subcontractors and suppliers are subject to approval by the Owner.  The list of names of persons or entities proposed for each principal portion of the Work with contracts or orders in excess of $10,000.00 shall be completed and promptly furnished to the Owner following award of this Contract.**

**§ 5.2.1.2 The Contractor is herby notified that any subcontractor or supplier, including their principals or associated companies, that have previously been desinged by the Owner's lender as unacceptable will be subject to approval review by the Owner and Lender.**

**§ 5.2.1.3 The Contract Sum shall be increased or decreased by the difference in cost caused by the rejection of any subcontractor or supplier by Owner or its Lender.**

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

## § 5.3 SUBCONTRACTUAL RELATIONS

~~By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.~~ **§ 5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                              (1870219893)

bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.3.2** Notwithstanding any provision of Subparagraph 5.3.1, any part of the Work performed for the Contractor by a Subcontractor or its Sub-subcontractor shall be pursuant to a written Subcontract between the Contractor and such Subcontractor (or the Subcontractor and its Sub-subcontractor at any tier), which shall be prepared on a form of subcontract satisfactory to the Owner in all respects. Each such subcontract shall, where the context so requires, contain provisions that:

a. require that such Work be performed in accordance with the requirements of the Contract Documents;

b. waive all rights the contracting parties may have against one another or that the Subcontractor may have against the Owner for damages caused by fire or other perils covered by the insurance described in the Contract;

c. require the Subcontractor to carry and maintain insurance coverage in accordance with the Contract, and to file certificates of such coverage with the Contractor;

d. require the Subcontractor to submit certificates and waivers of liens for work completed by it and by its Sub-subcontractors as a condition to the disbursement of the progress payment next due and owing;

e. require submission to Contractor or Subcontractor, as the case may be, of applications for payment in a form approved by the Owner, together with clearly defined invoices and billings supporting all such applications under each subcontract to which the Contractor is a party;

f. report, so far as practicable, unit prices and any other feasible formula for use in the determination of costs of changes in the Work;

g. require each Subcontractor to furnish to the Contractor in a timely fashion all information necessary for the preparation and submission of the reports required herein;

h. require that each Subcontractor continue to perform under its subcontract in the event that the Contract is terminated and the Owner shall take an assignment of said subcontract and request such Subcontractor to continue such performance;

i. require each Subcontractor to remove all debris created by its activities.

**§ 5.3.3** Contractor shall indemnify and hold harmless the Owner and the Owner's consultants and agents from any loss, cost, damage and claims arising from or related to any act or omission of Contractor's subcontractors.

## § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS

**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 05/28/2014, and is not for resale.
User Notes:                                                                                        (1870219893)

.1     assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2     assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

~~When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.~~

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**§ 5.4.3** ~~Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.~~ [INTENTIONALLY OMITTED]

## ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
**§ 6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY
**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:** (1870219893)

Init.

**24**

§ 6.2.4 The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 OWNER'S RIGHT TO CLEAN UP
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

### ARTICLE 7   CHANGES IN THE WORK
### § 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

**§ 7.1.4 Notwithstanding anything in Article 7 to the contrary, the agreement or approval of the Architect shall not be required regarding change in the Work and the Architect shall not be involved in processing any changes to the Contract Sum or time.  Any changes shall be as directed by the Owner or as agreed to in writing by the Owner and the Contractor.**

### § 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
   .1    The change in the Work;
   .2    The amount of the adjustment, if any, in the Contract Sum; and
   .3    The extent of the adjustment, if any, in the Contract Time.

### § 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
   .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
   .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
   .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
   .4    As provided in Section 7.3.7.

**Init.**

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                    (1870219893)

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5   Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

**§ 7.3.11 When either the Owner or the Contractor or both do not agree concerning the adjustments in the Contract Sum and Contract Time, such disagreement shall be resolved in the manner prescribed by Article 15.**

**§ 7.4 MINOR CHANGES IN THE WORK**
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                                    (1870219893)

**ARTICLE 8   TIME**
**§ 8.1 DEFINITIONS**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 PROGRESS AND COMPLETION**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.3 DELAYS AND EXTENSIONS OF TIME**
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine. **Any delay in Work caused by a Subcontractor of Contractor shall not justify an extension of the Contract Time, even if Contractor is required to remove the Subcontractor from the job and substitute another Subcontractor or its own work force.**

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15. **The Contractor shall immediately take all steps reasonably possible to lessen the adverse impact of such delay on Owner.**

**§ 8.3.3** ~~This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.~~**If any delay is not caused by an act or omission of Owner, then Contractor shall not be entitled to any increase in the Contract Sum for any such delay. The parties agree that, without specific written authorization of Owner, the Contract Sum shall not be increased due to any delay to the Project caused by unanticipated adverse site conditions or inclement weather ("Inclement Conditions"). If Contractor encounters Inclement Conditions that Contractor believes would increase the Contract Sum if Contractor continued the Work under such conditions in order to meet the Substantial Completion dates set forth in the Agreement, Contractor shall immediately (i.e. the day of the Inclement Conditions) notify Owner in writing of such Inclement Conditions. Contractor shall not be entitled to any increase in the Contract Sum due to such Inclement Conditions unless the Owner specifically directs Contractor to proceed under such Inclement Conditions and Owner executes a Change Order increasing the Contract Sum for proceeding under such Inclement Conditions. If Owner does not authorize proceeding under the Inclement Conditions, the Contractor may temporarily cease work and thereafter proceed with the Work at such time as the Inclement Conditions become normalized, with an equitable adjustment/extension of the time for completion. If Contractor removes its equipment from the site during periods of Inclement Conditions, Contractor shall not charge Owner any expense for remobilization and Contractor shall promptly proceed with the Work when the Inclement Conditions have normalized. Contractor will immediately (i.e. the day of the condition or circumstance) notify Owner in writing of any adverse weather condition, site condition or other circumstance which Contract may encounter in performance of the Work which Contractor believes has caused a delay to Contractor's ability to timely perform its obligations.**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                           (1870219893)

Init.

/

27

55

## ARTICLE 9   PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**§ 9.1.2 Notwithstanding anything to the contrary contained in the Contract Documents, the Owner may withhold any payment to the Contractor hereunder if and for so long as the Contractor fails to perform any of its obligations hereunder or otherwise is in default under any of the Contract Documents; provided, however, that any such holdback shall be limited to an amount sufficient in the reasonable opinion of the Owner to cure any such default or failure of performance by the Contractor.**

### § 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, ~~9.2.,~~ for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to ~~the best of the Contractor's knowledge, information and belief,~~ shall be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

**§ 9.3.3.1 The Contractor further expressly undertakes to defend the Owner, at the Contractor's sole expense, against any actions, lawsuits, or proceedings brought against the Owner as a result of liens filed against the Work, the site of any of the Work, the Project site and any improvements thereon, payments due the Contractor, or any portion of the property of the Owner (referred to collectively as "liens" in this Section 9.3.3).  The Contractor hereby agrees to indemnify and hold the Owner harmless against any such liens or claims of lien and agrees to pay any judgment or lien resulting from any such actions, lawsuits, or proceedings.**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                 (1870219893)

**§ 9.3.3.2** The Owner shall release any payments withheld due to a lien or claim of lien if the Contractor obtains security acceptable to the Owner or a lien bond that is (i) issued by a surety acceptable to the Owner, (ii) in form and substance satisfactory to the Owner, and (iii) in an amount not less than One Hundred Fifty percent (150%) of such lien claim.  By posting a lien bond or other acceptable security, however, the Contractor shall not be relieved of any responsibilities or obligations under this Subparagraph 9.3.3., including, without limitation, the duty to defend and indemnify the Indemnities.  The cost of any premiums incurred in connection with such bonds and security shall be the responsibility of the Contractor and shall not be part of, or cause any adjustment to, the Contract Sum.

**§ 9.3.3.3** The Contractor agrees to waive any right it may have to assert a mechanic's or other lien against the Project site and any improvements thereon, including, without limitation, the Work itself.  Furthermore, the Contractor will cause a similar provision, waiving any right to a mechanics' or other lien against the property, to be included in all of its subcontracts, any sub-subcontracts, and all contracts with material suppliers.  Upon execution of the Agreement, Contractor shall also execute the waiver of lien in compliance with applicable statues of the state where the project is located.

### § 9.4 CERTIFICATES FOR PAYMENT

**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

### § 9.5 DECISIONS TO WITHHOLD CERTIFICATION

**§ 9.5.1** ~~The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of~~ Owner may decide to withhold payment from the Contractor for any of the following reasons and for any potential loss, claim or damage which Owner will likely incur due to any default by Contractor.  The Architect shall have no role in determining payment by the Owner to Contractor:

    .1    defective Work not remedied;

    .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

    .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

    .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

    .5    damage to the Owner or a separate contractor;

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                                     (1870219893)

.6      reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7      ~~repeated failure to carry out the Work in accordance with the Contract Documents.~~

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** ~~If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.~~ [Intentionally Omitted].

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner. **Notwithstanding anything in the Contract Documents to the contrary, the Owner may elect, in the Owner's sole discretion, to make any payment requested by the Contractor on behalf of a subcontractor of any tier jointly payable to the Contractor and such subcontractor. The Contractor and such subcontractor shall be responsible for the allocation and disbursement of funds included as part of any such joint payment. In no event shall any joint payment be construed to create any (i) contract between the Owner and a subcontractor of any tier, (ii) obligations from the Owner to such subcontractor, or (iii) rights in such subcontractor against the Owner.**

**§ 9.6.2.1 If the Owner has reason to believe that the Contractor is not properly paying the subcontractor, the Owner shall have the right to pay the subcontractor and supplier, either directly or through joint checks and the Owner shall have a right to settle any amounts with the subcontractor or supplier.**

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                     (1870219893)

## § 9.7 FAILURE OF PAYMENT

~~If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.~~§ 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents. **Notwithstanding anything to the contrary contained herein, the Contractor may not stop the Work during the pendency of a bona fide dispute between Owner and Contractor provided any sums in dispute claimed by the Contractor are placed in escrow and further provided that Owner shall continue to pay Contractor all undisputed sums as and when due.**

**§ 9.7.2 If the Owner is entitled to reimbursement or payment from the Contractor under or pursuant to the Contract Documents, such payment shall be made promptly upon demand by the Owner. Notwithstanding anything contained in the Contract Documents to the contrary, if the Contractor fails to promptly make any payment due the Owner, or if the Owner incurs any costs and expenses to cure any default of the Contractor or to correct defective Work, the Owner shall have an absolute right to offset such amount against the Contract Sum and may, in the Owner's sole discretion, elect either to (i) deduct an amount equal to that which the Owner is entitled from any payment then or thereafter due the Contractor from the Owner, or (ii) issue a written notice to the Contractor reducing the Contract Sum by an amount equal to that which the Owner is entitled.**

## § 9.8 SUBSTANTIAL COMPLETION

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.1.2 Contractor shall achieve Substantial Completion by the date required in the Agreement. Substantial Completion shall not constitute Final Completion, and Contractor shall achieve Substantial Completion as early as possible so that any remaining punchlist work can be performed and Final Completion can be timely achieved.**

**§ 9.8.1.3 Final Completion is further defined as the date when all construction indicated in the Contract Documents is 100% complete and accepted for possession by the Owner and/or by governmental authorities. The dates of Final Completion are indicated in the Agreement between the Owner and Contractor.**

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. **Contractor shall include on the list of items to be completed or corrected, the cost of completing or correcting each such item. The Contractor shall proceed promptly to complete and correct items on the list.** Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 08/26/2014, and is not for resale.
User Notes:                                                                                                    (1670219693)

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion. **The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work, whether performed by it or by its Subcontractor at any tier.**

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

**§ 9.9 PARTIAL OCCUPANCY OR USE**
**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

**§ 9.10 FINAL COMPLETION AND FINAL PAYMENT**
**§ 9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 08/26/2014, and is not for resale.
User Notes: (1670219693)

Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ 9.10.3 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
    .1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
    .2    failure of the Work to comply with the requirements of the Contract Documents; or
    .3    terms of special warranties required by the Contract Documents.

§ 9.10.5 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

§ 10.2 SAFETY OF PERSONS AND PROPERTY
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
    .1    employees on the Work and other persons who may be affected thereby;
    .2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
    .3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 10.2.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. The risk and responsibility for the safety and loss of materials stored on site, off site and in transit rests with the Contractor.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/28/2014, and is not for resale.
User Notes:    (1870219893)

10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

## § 10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY

If either party suffers injury or damage to person or property because of an act or omission of the other party, of any of the other party's employees or agents, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

## § 10.3 HAZARDOUS MATERIALS

**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

**§ 10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                       (1870219893)

perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**§ 10.4 EMERGENCIES**
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

**ARTICLE 11 INSURANCE AND BONDS**
**§ 11.1 CONTRACTOR'S LIABILITY INSURANCE**
**§ 11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1   Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;

    .2   Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

    .3   Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

    .4   Claims for damages insured by usual personal injury liability coverage;

    .5   Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

    .6   Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

    .7   Claims for bodily injury or property damage arising out of completed operations; and

    .8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.

**§ 11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

**§ 11.1.3.1 Prior to the commencement of the Work, Contractor shall file with the Owner valid Certificates of Insurance and amendatory riders or endorsements of contractor's insurance policies, all in form and substance satisfactory to the Owner, naming Owner and any subsidiary, parent or affiliate corporation of Owner and their directors, officers, agents and employees or other persons or entities with an insurable interest designated by Owner as additional insureds thereunder. Said endorsements or amendatory riders**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                       (1870219893)

Init.

shall indicate that as respects said additional insureds, there shall be severability of interests under said insurance policies for all coverages provided under said insurance policies.

It is understood and agreed that no payment will be made on the Agreement unless applicable certificate of insurance required by this Paragraph has been delivered to the Owner.  The Certificates and amendatory riders or endorsements shall clearly indicate the specific coverage (including the contractual liability for the Contractor's obligations under Section 3.18) and shall contain a provision requiring the giving of written notice to Owner at least thirty (30) days prior to the cancellation, non-renewal or material modification of any  such policies, as evidenced by return receipt of the United States Certified or Registered Mail.  Contractor shall not permit Subcontractors to commence work on any subcontracts until all similar insurance required of  Subcontractors has been obtained.

§ 11.1.3.2  If requested by the Owner after the date of the Agreement, the Contractor shall promptly procure, at the Owner's expense, liability insurance in such amounts as the owner may request insuring against perils not listed in the Contract.

§ 11.1.3.3  If the Contractor fails to purchase or maintain or require to be purchased and maintained the liability insurance specified in the Contract, the Owner may (but shall not be obligated to) purchase such insurance on the Contractor's behalf and shall be entitled to be repaid for any premiums paid therefor by the Contractor in the manner set forth in Section 2.4.

§ 11.1.3.4  When such insurance, due to the attainment of a normal expiration date or renewal date, shall expire, the Contractor shall, not less than thirty (30) days prior to such expiration or renewal date, supply the Owner with updated replacement Certificates of Insurance and amendatory riders or endorsements that clearly evidence the continuation of all coverage in the same manner, limits of protection, and scope of coverage, as was provided by the Certificates and amendatory riders or endorsements originally supplied.

§ 11.1.4 The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

§ 11.2 OWNER'S LIABILITY INSURANCE
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

§ 11.3 PROPERTY INSURANCE
§ 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                    (1870219893)

36

of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

## § 11.3.2 BOILER AND MACHINERY INSURANCE
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

## § 11.3.3 LOSS OF USE INSURANCE
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

§ 11.3.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.3.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

## § 11.3.7 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                          (1870219893)

A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 11.3.8** A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**§ 11.3.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may ~~reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor.~~ reach. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**§ 11.3.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

## § 11.4 PERFORMANCE BOND AND PAYMENT BOND
**§ 11.4.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**§ 11.4.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
**§ 12.1.1** If a portion of the Work is covered contrary to the ~~Architect's~~ Architect's, Owner's or any governmental authority's request or to requirements specifically expressed in the Contract Documents, it ~~must, if requested in writing by the Architect, be uncovered for the Architect's~~ must be uncovered for the Architect's, Owner's or any governmental authority's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
#### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the ~~Architect~~ Architect, Owner or any governmental authority or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                          (1870219893)

## § 12.2.2 AFTER SUBSTANTIAL COMPLETION

**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## § 12.3 ACCEPTANCE OF NONCONFORMING WORK

If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13   MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW

The Contract shall be governed by the law of the place where the Project is ~~located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.~~ located.

### § 13.2 SUCCESSORS AND ASSIGNS

**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. ~~Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party~~ Contractor may not assign its rights or obligations under this Contract. If Contractor attempts to make such an assignment without such consent, ~~that party~~ it shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment. **Owner may, without**

Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                   (1870219893)

consent of the Contractor, assign its rights and obligations under the Contract to any affiliate of Owner, successor in interest to Owner's interest in the Project, or purchaser of the Project, and Owner will be relieved of its obligations hereunder provided that any such assignee or successor entity shall have executed a written assumption of the Contract.  Any such assignee or successor entity shall succeed to the rights of the Owner shall be entitled to enforce its rights hereunder.

### § 13.3 WRITTEN NOTICE
Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

§ 13.4.3 The invalidity of any part or provision of the Contract Documents shall not impair or affect in any manner the validity, enforceability or effect of the remaining parts and provisions of the Contract Documents.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/28/2014, and is not for resale.
User Notes:                                                                                                    (1870219893)

**§ 13.6 INTEREST**
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**§ 13.7 TIME LIMITS ON CLAIMS**
~~The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.~~ **§ 13.7.1** The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract within the time period specified by applicable law, or 10 years after the date of Substantial Completion of the Work if no such applicable law exists. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.

**§ 13.7.2 Notwithstanding any provision of Section 13.7.1 to the contrary, the "discovery rule" as determined in accordance with the common law of the State where the Project is located shall be applied in determining when any applicable limitations period commences.**

**ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT**
**§ 14.1 TERMINATION BY THE CONTRACTOR**
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

    .1   Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
    .2   An act of government, such as a declaration of national emergency that requires all Work to be stopped;
    .3   Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
    .4   The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**§ 14.2 TERMINATION BY THE OWNER FOR CAUSE**
**§ 14.2.1** The Owner may terminate the Contract if the Contractor
    .1   ~~repeatedly~~ refuses or fails to supply enough properly skilled workers or proper materials;
    .2   fails to make **prompt** payment to Subcontractors for materials or ~~labor in accordance with the respective agreements between the Contractor and the Subcontractors;~~ labor;

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                      (1870219893)

Init.
/

41

    .3    ~~repeatedly~~ disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; ~~or~~

    .4    otherwise is guilty of substantial breach of a provision of the Contract ~~Documents.~~Documents: or

**.5**    **is adjudged a bankrupt, or makes a general assignment for the benefit of creditors, or if a receiver is appointed on account of the Contractor's insolvency.**

**§ 14.2.2** When any of the above reasons exist, the ~~Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action,~~ Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor ~~and the Contractor's surety, if any,~~ seven days' written notice, terminate employment of the Contractor and ~~may, subject to any prior rights of the surety:~~may:

    .1    Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

    .2    Accept assignment of subcontracts pursuant to Section 5.4; and

    .3    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the ~~Initial Decision Maker,~~ Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 14.2.5  In the event that Owner wrongfully terminates this Contract for default, such wrongful termination will be automatically converted to a termination for convenience.**

**§ 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE**
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

    .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

    .2    that an equitable adjustment is made or denied under another provision of the Contract.

**§ 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**
**§ 14.4.1** The Owner may, at any time, **in whole or in part,** terminate the Contract for the Owner's convenience and without cause. **Upon any such termination, Contractor agrees to waive any claims for damages, including loss of anticipated profits, on account thereof, and as the sole right and remedy of Contractor, Owner shall pay Contractor in accordance with (c) below.**

**The provisions of the Contract, which by their nature survive final acceptance of the Work, shall remain in full force and effect after such termination to the extent provided in such Provisions.**

    a.    **Upon receipt of any such notice, Contractor shall, unless the notice directs otherwise, immediately discontinue the Work on that date and to the extent specified in the notice; place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the Work as is not discontinued; promptly make every reasonable effort to procure cancellation upon terms satisfactory to Owner of all orders and subcontracts to the extent they relate to the performance of the discontinued portion of the Work and shall thereafter do only such Work as may be necessary to preserve and protect work already in progress and to protect**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 08/26/2014, and is not for resale.
User Notes:    (1870219893)

Init.

/

**materials, plants and equipment on the site or in transit thereto.**

> **b.   Upon such termination, the obligations of the Contract shall continue as to portions of the Work already performed and as to bona fide obligations assumed by Contractor prior to the date of termination.**

> **c.      Upon termination, Contractor shall be entitled to be paid the full cost of all Work properly done by Contractor to the date of termination not previously paid for plus the amount of any cancellation of restacking fees incurred to third parties as a result of such termination, less sums already received by Contractor on account of the portion of the Work performed.  If at the date of such termination Contractor has properly purchased, prepared or fabricated off the Site any goods for subsequent incorporation in the Work, and if Contractor delivers such goods to the Site or to such other place as the Owner shall reasonably direct, then Contractor shall be paid for such goods or materials.**

§ 14.4.2 ~~Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall~~

> .1    ~~cease operations as directed by the Owner in the notice;~~

> .2    ~~take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and~~

.3    ~~except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.~~ [Intentionally Omitted]

§ 14.4.3 ~~In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.~~[Intentionally Omitted]

## ARTICLE 15    CLAIMS AND DISPUTES
### § 15.1 CLAIMS
### § 15.1.1 DEFINITION
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 15.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice ~~to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker.~~ containing a description thereof to the other party. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 15.1.3 CONTINUING CONTRACT PERFORMANCE
Pending final resolution of a Claim, except as otherwise agreed in ~~writing or as provided in Section 9.7 and Article 14,~~ writing, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. ~~The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.~~

### § 15.1.4 CLAIMS FOR ADDITIONAL COST
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME
§ 15.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                                                    (1870219893)

Init.

/

43

**§ 15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 15.1.6** ~~CLAIMS FOR CONSEQUENTIAL DAMAGES~~ ~~The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes~~

~~.1~~ ~~damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and~~

~~.2~~ ~~damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.~~

~~This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.~~[INTENTIONALLY OMITTED]

**§ 15.2 INITIAL DECISION**

**§ 15.2.1** ~~Claims.~~ If a claim arises, the parties shall utilize good faith reasonable efforts to resolve the Claim among themselves. If the parties are unable to resolve the Claim among themselves, they shall have the remedies as herein provided. At the option of either party, claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, ~~shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1,~~ may be referred to the Architect for initial decision. In the event of such a referral, an initial decision shall be required as a condition precedent to ~~mediation~~ litigation of any Claim arising prior to the date final payment is due, unless **(i) the position of Architect is vacant; (ii) the parties otherwise agree in writing; (iii) the Claim relates to a mechanic's lien; or (iv)** 30 days have passed after the Claim has been referred to the ~~Initial Decision Maker~~ Architect with no decision having been rendered. ~~Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker~~ The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 15.2.2** The ~~Initial Decision Maker~~ Architect will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant ~~or a response with supporting data from the other party,~~ (2) reject the Claim in whole or in part, ~~(3) approve the Claim,~~ **stating reasons for the rejection,** (3) recommend approval of the Claim by the other party, (4) suggest a compromise, or (5) advise the parties that the ~~Initial Decision Maker~~ Architect is unable to resolve the Claim if the ~~Initial Decision Maker~~ Architect lacks sufficient information to evaluate the merits of the Claim or if the ~~Initial Decision Maker~~ Architect concludes that, in the ~~Initial Decision Maker's~~ Architect's sole discretion, it would be inappropriate for the ~~Initial Decision Maker to resolve the Claim.~~ Architect to resolve the Claim.

**§ 15.2.2.1 If a Claim has been resolved, the Architect will prepare or obtain appropriate documentation.**

**§ 15.2.2.2 If a Claim has not been resolved, the party making the Claim shall, within ten days after the Architect's preliminary response, take one or more of the following actions: (1) submit additional supporting data requested by the Architect, (2) modify the initial Claim or (3) notify the Architect that the initial Claim stands. If the parties are unable to resolve a Claim despite their good faith reasonable efforts to resolve such Claim among themselves, then they shall have the right to file an action in the courts of the State in which the Project is located to seek redress.**

**§ 15.2.3** In evaluating Claims, the ~~Initial Decision Maker~~ Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the ~~Initial Decision Maker~~ Architect in rendering a decision. The ~~Initial Decision Maker~~ Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/29/2014, and is not for resale.
**User Notes:** (1870219893)

§ 15.2.4 ~~If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.~~[Intentionally Omitted].

§ 15.2.5 ~~The Initial Decision Maker~~ **If a Claim has not been resolved after consideration of the foregoing and of further evidence presented by the parties or requested by the Architect, the Architect will notify the parties in writing that the Architect's decision will be made within seven days, which decision shall be final and binding on the parties but subject to litigation.  Upon expiration of such time period, the Architect** will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties ~~and the Architect, if the Architect is not serving as the Initial Decision Maker,~~ of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to ~~mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.~~litigation.

§ 15.2.6 ~~Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.~~ [Intentionally Omitted].

§ 15.2.6.1 ~~Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.~~ [Intentionally Omitted].

§ 15.2.7 In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ 15.2.8 If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

§ 15.3 MEDIATION
**Wherever the General Conditions or the Contract reference mediation or a mediation award, said reference shall be deemed to refer to litigation or a judgment of court.**

**The parties agree that, in the event of a dispute or default under the Contract Documents which results in litigation between the parties, the prevailing party in any such litigation shall be entitled to an award of reasonable attorney's fees.**

§ ~~15.3.1 Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.~~

§ ~~15.3.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.~~

§ ~~15.3.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.~~

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/28/2014, and is not for resale.
User Notes: (1870219893)

Init.

/

## § 15.4 ARBITRATION

**Wherever the General Conditions or the Contract reference arbitration or an arbitration award, said reference shall be deemed to refer to litigation or a judgment of court.**

**The parties agree that, in the event of a dispute or default under the Contract Documents which results in litigation between the parties, the prevailing party in any such litigation shall be entitled to an award of reasonable attorney's fees.**

§ ~~15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.~~

§ ~~15.4.1.1 A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.~~

§ ~~15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

§ ~~15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.~~

§ ~~15.4.4 CONSOLIDATION OR JOINDER~~
§ ~~15.4.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).~~

§ ~~15.4.4.2 Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.~~

§ ~~15.4.4.3 The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.~~

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
User Notes:                                                                          (1870219893)

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Jody Glover, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with this certification at 10:16:39 on 05/16/2014 under Order No. 6950125839_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction, as published by the AIA in its software, other than changes shown in the attached final document by underscoring added text and striking over deleted text.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

**AIA Document D401™ – 2003.** Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:16:39 on 05/16/2014 under Order No.6950125839_1 which expires on 06/26/2014, and is not for resale.
**User Notes:**                                                                                                                                      (1870219893)

EXHIBIT "B"

16312149v.2



**ACS Partners LLC**
ogwood Rd
05
I GA 30075

ADVANCED CONSTRUCTION SERVICES
9755 Dogwood Rd., Ste 105
Roswell, GA 30075

V-368771

*Risk*

# Contract Invoice

Invoice#: 14013-8

Date: 04/06/2015

**Billed To:** Home Properties
850 Clinton Square
Rochester NY 14604

**Project:** Racquet Club East
1970 Veterans Hwy
Levittown PA 19056

*Wendy King 4/3/15*

| | | |
|---|---|---|
| **Due Date:** 05/06/2015 | **Terms:** 30DY | Order# |

| Description | Amount |
|---|---|
| Progress Billing Pay App 8 | 503,000.33 |

*Jim Boyer*
DONNA BOYER
04/17/15
**RECEIVED**
APR 14 2015
Central Office-RP

Claim # 10088
DOL 7/26/13
523  1561. 001

| Subledger Type | 15 (P) | 16 R | (17) T | 21 B |
|---|---|---|---|---|

*oops 4/17/15*

*Keith Knight 4-16-15*

*A service charge of 0.00 % per annum will be charged on all amounts overdue on regular statement dates.*

*Thank you for your prompt payment!*

Returned to Approver

APR 15 2015

Central Office-KD

| | |
|---|---|
| Sales Tax: | 0.00 |
| Invoice Total: | 503,000.33 |
| Retention: | 50,300.04 |
| Amount Paid: | 0.00 |
| **Amount Due** | **452,700.29** |

# APPLICATION AND CERTIFICATE FOR PAYMENT

*AIA DOCUMENT G702*

TO: Home Properties Racquet Club East, LLC
1970 Veterans Highway
Livittown, PA 19056

FROM: ACS Partners, LLC
9755 Dogwood Road, Suite 105
Roswell, GA 30075
Ph: 404-250-6262

PROJECT: Racquet Club B Building Reconstruction
1970 Veterans Highway
Levittown, PA 19111

APPLICATION NO.: 8          DISTRIBUTION TO:
INVOICE NO.: 14013-8        [X] CONTRACTOR
INVOICE DATE: 04/06/2015
PERIOD TO: 04/06/2015
CONTRACT DATE: 05/19/2014

CONTRACT NO.: 14013          OWNER'S JOB NO.:          CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

### CHANGE ORDER SUMMARY

| Change Orders approved in previous months by Owner | | |
|---|---|---|
| | ADDITIONS | DEDUCTIONS |
| TOTAL | | |

**Approved this Month**

| Number | Date Approved | |
|---|---|---|
| 1 | Demo & Frame | $38,143.53 |
| 2 | Add Alternate for Sistering | $9,450.00 |
| 3 | Permit | $3,254.00 |
| | TOTALS | $50,847.53 |

Net Change by Change Orders

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| | $50,847.53 | $0.00 |
| | | $0.00 |

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM | $1,908,781.29 |
| 2. Net change by Change Orders | $50,847.53 |
| 3. CONTRACT SUM TO DATE (Line 1+/-2) | $1,959,628.82 |
| 4. TOTAL COMPLETED AND STORED TO DATE | $1,959,628.82 |
| (Column G on G703) | |
| 5. RETAINAGE: | |
| a. 10% of Completed Work | |
| (Column D + E on G703) | |
| Total in Column I of G703) | |
| 6. TOTAL EARNED LESS RETAINAGE | $195,962.88 |
| (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR | $195,962.88 |
| PAYMENT (Line 6 from prior Certificate) | $1,763,665.94 |
| 8. CURRENT PAYMENT DUE | $1,310,965.65 |
| 9. BALANCE TO FINISH, PLUS RETAINAGE | $452,700.29 |
| (Line 3 less Line 6) | $195,962.88 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Owner for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____   Date: 4/6/15

State of: Georgia   County of: Cobb
Subscribed and sworn to before me this   6-Apr
Notary Public: Justin Moore
My Commission Expires: 9/9/18

Witness my hand and official seal:

Notary Public.

*[Notary Seal]*
JUSTIN MOORE
Notary Public, Georgia
Cobb County
My Commission Expires
September 09, 2018

**Notes for Contractor:**
Only bill for change orders that have been approved by Owner. Billing for unapproved change orders may result in invoice being kicked back for revision and eliminated from current billing to owner

Attach all appropriate Lien Waiver forms with completed Application for Payment.

---

**APPLICATION FOR PAYMENT CHECKLIST - TO BE COMPLETED BY OWNER**

Approved By: _____
Invoice #: _____
Date: _____

Approved By: _____
Date: _____

Job #: _____   CSI #: _____

| | Gross: | Type | Amount |
|---|---|---|---|
| | Retention: | | |
| | Discount: | | |

- Original Application
- Original Continuation Sheet
- Conditional Lien Release
- Unconditional Supplier Releases
- Conditional Supplier Releases

NOTE: PAYMENT WILL BE DELAYED IF APPLICATION IS NOT ACCURATE. IF ITEMS ARE MISSING OR IF UNAPPROVED CHANGE ORDERS ARE BILLED.

Project Accountant: Check list below for completeness. If items are missing, contact Contractor for completion before approval is given to Project Manager.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Subcontractor's signed certification is attached.

*AIA DOCUMENT G703*

SUBCONTRACTOR:   ACS Partners, LLC

APPLICATION NO.  14013-8
INVOICE DATE:   4/6/15
PERIOD From-to:  4/6/15

PAGE OF PAGES 2 of 2   8

| A REF NO | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | Mobilization | $95,439.06 | $95,439.06 | | | $95,439.06 | 100.00% | $  - | $  9,543.91 |
| 6 | Appliances | $13,641.86 | $13,641.86 | | | $13,641.86 | 100.00% | $  0.00 | $  1,364.19 |
| 15 | Cabinetry | $59,694.87 | | $59,694.87 | | $59,694.87 | 100.00% | $  0.00 | $  5,969.49 |
| 19 | Doors | $14,465.35 | | $7,232.67 | $7,232.68 | $14,465.35 | 100.00% | $  0.00 | $  1,446.54 |
| 22 | Drywall | $287,017.61 | $172,210.56 | $114,807.05 | | $287,017.61 | 100.00% | $  0.00 | $  28,701.76 |
| 34 | Electrical | $285,884.94 | $271,590.69 | $14,294.24 | | $285,884.93 | 100.00% | $  0.01 | $  28,588.49 |
| 38 | Floor Covering Carpet | $23,486.63 | | $23,486.63 | | $23,486.63 | 100.00% | $  0.00 | $  2,348.66 |
| 42 | Floor Covering Tile | $11,335.69 | | $5,667.84 | $5,667.85 | $11,335.69 | 100.00% | $  - | $  1,133.57 |
| 45 | Floor Covering Vinyl | $4,372.28 | | $4,372.28 | | $4,372.28 | 100.00% | $  - | $  437.23 |
| 51 | Finished Carpentry | $52,432.70 | | $26,216.35 | $26,216.35 | $52,432.70 | 100.00% | $  0.00 | $  5,243.27 |
| 56 | Finished Hardware | $13,310.17 | | $6,655.08 | $6,655.09 | $13,310.17 | 100.00% | $  0.00 | $  1,331.02 |
| 60 | Framing | $106,829.88 | $106,829.88 | | | $106,829.88 | 100.00% | $  0.01 | $  10,682.99 |
| 69 | HVAC-Mechanical | $292,819.94 | $278,178.94 | $14,641.00 | | $292,819.94 | 100.00% | $  0.00 | $  29,281.99 |
| 73 | Insulation | $87,597.10 | $87,597.10 | | | $87,597.10 | 100.00% | $  0.00 | $  8,759.71 |
| 83 | Light Fixtures | $21,555.74 | $21,555.74 | | | $21,555.74 | 100.00% | $  0.00 | $  2,155.57 |
| 89 | Marble- Cultured | $2,512.56 | $2,512.56 | | | $2,512.56 | 100.00% | $  - | $  251.26 |
| 92 | Mirrors | $5,490.24 | $5,490.24 | | | $5,490.24 | 100.00% | $  - | $  549.02 |
| 95 | Metals | $22,924.64 | $22,924.64 | | | $22,924.64 | 100.00% | $  - | $  2,292.46 |
| 105 | Plumbing | $127,886.55 | $121,492.22 | $6,394.33 | | $127,886.55 | 100.00% | $  0.00 | $  12,788.66 |
| 116 | Paint | $214,049.49 | | $149,834.64 | $64,214.84 | $214,049.48 | 100.00% | $  0.01 | $  21,404.95 |
| 119 | Stairs | $12,877.49 | $12,877.49 | | | $12,877.49 | 100.00% | $  0.00 | $  1,287.75 |
| 123 | Tile | $53,005.90 | | $26,502.95 | $26,502.95 | $53,005.90 | 100.00% | $  0.00 | $  5,300.59 |
| 126 | Windows - Sliders | $63,030.17 | $63,030.17 | | | $63,030.17 | 100.00% | $  0.00 | $  6,303.02 |
| 129 | Windows -Vinyl | $37,120.45 | $37,120.45 | | | $37,120.45 | 100.00% | $  0.00 | $  3,712.05 |
| | CO: Demo and Frame | $38,143.55 | $38,143.55 | | | $38,143.55 | 100.00% | $  - | $  3,814.35 |
| | CO: Add. Alternate for sistering | $9,450.00 | $9,450.00 | | | $9,450.00 | 100.00% | $  - | $  945.00 |
| | CO: Permit | $3,254.00 | $3,254.00 | | | $3,254.00 | 100.00% | $  - | $  325.40 |
| | **GRAND TOTALS** | $1,959,628.82 | $1,320,138.73 | $503,000.33 | $136,489.76 | $1,959,628.82 | 100.00% | $0.00 | $195,962.88 |

Only bill for change orders that have been approved by Contractor.  Billing for unapproved change orders may result in invoice being kicked back for revision and
eliminated from current billing to owner.

Attach all appropriate Lien Waiver forms with completed Application for Payment.

Racquet Club East - Change Order Log

| Approved Change Order # | Approved Amount | Percent Complete | Paid to Date | Current Billing Period App | Past Due from Previous Pay App | Current Balance Due Less Retainage | Retainage Held to Date | Balance to Finish |
|---|---|---|---|---|---|---|---|---|
| 1 - Demo & Frame | $ 38,143.53 | 100% | $ 34,329.18 | $ - | $ - | $ - | $ 3,814.35 | $ 3,814.35 |
| 2 - Add Alternate for Sistering | $ 9,450.00 | 100% | $ 8,505.00 | $ - | $ - | $ - | $ 945.00 | $ 945.00 |
| 3 - Permit | $ 3,254.00 | 100% | $ 2,928.60 | $ - | $ - | $ - | $ 325.40 | $ 325.40 |
| 4 - Delete Seal Studs | $ (15,401.88) | 100% | $ (15,401.88) | $ - | $ - | | | |
| 5 - Framing | $ 33,479.84 | 100% | $ 30,131.86 | $ - | $ - | $ - | $ 3,347.98 | $ 3,347.98 |
| 6 - Concrete Tub Drains | $ 24,657.09 | 100% | $ 22,191.38 | $ - | $ - | $ - | $ 2,465.20 | $ 2,465.20 |
| 7 - Electrical | $ 51,932.40 | 100% | $ 35,054.37 | $ 12,983.10 | $ - | $ 11,684.79 | $ 3,894.93 | $ 16,878.03 |
| 8 - Soffit Framing | $ 5,172.18 | 100% | $ 4,654.96 | $ - | $ - | $ - | $ 517.22 | $ 517.22 |
| 9 - HVAC Code Related Items | $ 44,265.14 | 100% | $ 29,878.97 | $ 11,066.28 | $ - | $ 9,959.65 | $ 3,319.89 | $ 14,386.17 |
| 10 - Gas Lines | $ 32,211.45 | 100% | $ 28,990.30 | $ - | $ - | $ - | $ 3,221.15 | $ 3,221.15 |
| 11 - Replace Plumbing Waste Lines | $ 114,520.22 | 100% | $ 97,914.78 | $ 3,134.40 | $ - | $ 2,820.97 | $ 10,879.42 | $ 16,605.44 |
| 12 - Insulation, Fire Caulk | $ 31,344.08 | 100% | $ 25,388.70 | $ - | $ - | $ - | $ 2,820.97 | $ 5,955.38 |
| 13 - Dropped Ceiling | $ 4,939.25 | 100% | $ 4,445.32 | $ - | $ - | $ - | $ 493.93 | $ 493.93 |
| 14 - Fire Suppression | $ 188,351.80 | 100% | $ 169,516.62 | $ 9,417.59 | $ - | $ 8,475.83 | $ 17,516.71 | $ 18,835.18 |
| 15 - Electrical | $ 18,925.50 | 100% | $ - | $ - | $ 18,925.00 | $ 17,032.50 | $ - | $ 18,925.00 |
| 16 - Dryer Vents | $ 4,908.00 | 100% | $ 4,417.20 | $ - | $ - | $ - | $ 490.80 | $ 490.80 |
| 17 - Masonry at Doors | $ 3,784.00 | 100% | $ 3,405.60 | $ - | $ - | $ - | $ 378.40 | $ 378.40 |
| 18 - Rails on Porches | $ 15,685.28 | 100% | $ - | $ - | $ 15,685.28 | $ 14,116.75 | $ - | $ 15,685.28 |
| 19 - Countertops | $ 954.27 | 100% | $ - | $ 954.27 | $ - | $ 858.84 | $ - | $ 954.27 |
| 20 - Sistering of Joists | $ 6,300.00 | 100% | $ 5,670.00 | $ - | $ - | $ - | $ 630.00 | $ 630.00 |
| 21 - Meter Bank Upgrade | $ 18,070.00 | 100% | $ 16,263.00 | $ - | $ - | $ - | $ 1,807.00 | $ 1,807.00 |
| 22 - Misc. Expense | [6,378.29 Req] | 100% | $ - | $ - | $ - | $ - | $ - | $ - |
| 23 - Gas Lines | $ 15,097.50 | 100% | $ 13,587.30 | $ - | $ - | $ - | $ 1,509.75 | $ 1,509.75 |
| 24 - Fire Proof Electrical Boxes | $ 17,127.00 | 100% | $ 15,414.30 | $ - | $ - | $ 15,414.30 | $ 1,712.70 | $ 1,712.70 |
| 25 - Fire Blocking | $ 21,768.75 | 100% | $ - | $ - | $ 21,768.75 | $ 19,591.87 | $ - | $ 21,768.75 |
| 26 - Metal Rails | $ (24,131.20) | 100% | $ - | $ - | $ (24,131.20) | $ (21,718.08) | $ - | $ (24,131.20) |
| 27 - Fire Rock Partition Walls | $ 9,540.00 | 100% | $ - | $ - | $ 9,540.00 | $ 8,586.00 | $ - | $ 9,540.00 |
| 28 - Additional Soffit | $ 2,376.00 | 100% | $ - | $ - | $ 2,376.00 | $ 2,138.40 | $ - | $ 2,376.00 |
| Total | $ 566,319.10 | | $ 537,285.56 | $ 37,555.64 | $ 56,379.03 | $ 99,955.50 | $ 60,090.80 | $ 151,652.38 |

## CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT

**NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.**

### Identifying Information

Name of Claimant: ACS Partners, LLC

Name of Customer: Racquet Club East

Job Location: 1970 Veterans Hwy Levittown, PA 19056

Owner: Home Properties Racquet Club East, LLC

Through Date: 04/06/2015

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

Maker of Check: Home Properties Racquet Club East, LLC

Amount of Check: $ 452,700.29

Check Payable to: ACS Partners, LLC

### Exceptions

This document does not affect any of the following:
(1) Retentions.
(2) Extras for which the claimant has not received payment.
(3) The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
    Date(s) of waiver and release: 02/05/2015
    Amount(s) of unpaid progress payment(s): $ 50,741.12
(4) Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and (B) the right to recover compensation for work not compensated by the payment.

### Signature

Claimant's Signature:

Claimant's Title: CEO

Date of Signature: 04/06/2015

On this ___ day of _____ 2014_, before me, the undersigned, a Notary Public in and for said County and State, personally appeared the individual who signed the foregoing waiver, being personally known to me, and the execution of same was the free and voluntary act and deed of the CONTRACTOR named and further certified, that if CONTRACTOR is a corporation, it appeared by the officer who signed on its behalf, and such officer to me acknowledged that the execution was by authority duly granted.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the date and the year last above written.
My commission expires:
___09/00/2018_____    Notary Public in and for

7/1/12

JUSTIN MOORE
Notary Public, Georgia
Cobb County
My Commission Expires
September 09, 2018

## CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT

**NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.**

| Identifying Information |
| --- |
| Name of Claimant: ACS Partners, LLC |
| Name of Customer: Racquet Club East |
| Job Location: 1970 Veterans Hwy Levittown, PA 19056 |
| Owner: Home Properties Racquet Club East, LLC |
| Through Date: 03/05/2015 |

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

| |
| --- |
| Maker of Check: Home Properties Racquet Club East, LLC |
| Amount of Check: $ 33,800.08 |
| Check Payable to: ACS Partners, LLC |

### Exceptions

This document does not affect any of the following:
(1) Retentions.
(2) Extras for which the claimant has not received payment.
(3) The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
    Date(s) of waiver and release: 02/05/2015
    Amount(s) of unpaid progress payment(s): $ 19,591.87
(4) Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and (B) the right to recover compensation for work not compensated by the payment.

| Signature |
| --- |
| Claimant's Signature: |
| Claimant's Title: CEO |
| Date of Signature: 03/05/2015 |

On this ___ day of _____ 2014_, before me, the undersigned, a Notary Public in and for said County and State, personally appeared the individual who signed the foregoing waiver, being personally known to me, and the execution of same was the free and voluntary act and deed of the CONTRACTOR named and further certified, that if CONTRACTOR is a corporation, it appeared by the officer who signed on its behalf, and such officer to me acknowledged that the execution was by authority duly granted.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed by official seal the date and the year last above written.
My commission expires:
_____09/09/2018_____      Notary Public in and for _____

7/1/12

JUSTIN MOORE
Notary Public, Georgia
Cobb County
My Commission Expires
September 09, 2018

EXHIBIT "C"

16312149v.2


**HOME PROPERTIES**

Home Properties, Inc.
850 Clinton Square
Rochester, New York 14604

May 13, 2015

ACS Partners, LLC            Sent via overnight mail and fax (404-250-6264)
9755 Dogwood Rd. Suite 105
Roswell, GA 30075

Attention: Shai Schlusslberg, CFO of ACS Partners, LLC

Re:    **NOTICE OF TERMINATION FOR CONVENIENCE of Contract between**
        Owner: Home Properties Racquet Club East, LLC, and Contractor: ACS Partners, LLC
        Project: Racquet Club B Building Reconstruction
        Date of Incident: 7/26/2013

Dear Mr. Schlusslberg,

This letter shall constitute written notice from Home Properties Racquet Club East, LLC ("Owner"), to ACS Partners, LLC ("ACS" or "Contractor"), that effective immediately, the above referenced contract (the "Contract") is terminated for the Owner's convenience pursuant to Article 14, Sections 14.4, and 14.4.1:

    Termination or Suspension of the Contract
    14.4 Termination by the Owner for convenience
    14.4.1 The Owner may, at any time, in **whole or in part**, terminate the Contract for the Owner's convenience and without cause. **Upon any such termination, Contractor agrees to waive and claims for damages, including loss of anticipated profits, on account thereof, and as the sole right and remedy of the Contractor, Owner shall pay Contractor in accordance wih (c) below, The provisions of the Contract, which by their nature survive final acceptance of the Work, shall remain in full force and effect after such termination to the extent provided in such Provisions.**
    a.  **Upon receipt of any such notice, Contractor shall, unless the notice directs otherwise, immediately discontinue the Work on that date and to the extent specified in the notice; place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the work as is not discontinued; promptly make every reasonable effort to procure cancellation upon terms satisfactory to the Owner of all orders and subcontracts to the extent they relate to the performance of the discontinued portion of the work and shall thereafter do only such work as may be necessary to preserve and protect work already in progress and to protect materials, plants and equipment on the site or in transit thereto.**
    b.  **Upon such termination, the obligations of the Contract shall continue as to portions of the work already performed and as to bona fide obligations assumed by the Contractor prior to the date of the termination.**
    c.  **Upon termination, Contractor shall be entitled to be paid the full cost of all work properly done by Contractor to the date of termination not previously paid for plus the amount of any cancellation of restocking fees incurred to third parties as a result of such termination, less sums already received by Contractor on account of the portion of the work performed. If at the date of such termination Contractor has properly purchased, prepared, or fabricated off the site any goods for subsequent incorporation in the work, and if Contractor delivers such goods to**

**the site or to such other place as the Owner shall reasonably direct, then Contractor shall be paid for such goods or materials.**

Pursuant to this notice and in accordance with the terms and conditions of the Contract, ACS is hereby notified and instructed to immediately cease and discontinue all work under the contract (except as set forth below), including the placing of orders or subcontracts for materials, supplies, equipment, services, or facilities, except as may be necessary to preserve and protect work already in progress and to protect materials, plants and equipment on the site or in transit thereto.  ACS is further instructed to make every reasonable effort to procure cancellation of all existing orders or subcontracts upon terms and conditions satisfactory to the Owner.  If existing orders or subcontracts cannot be cancelled, or cannot be cancelled under terms and conditions favorable to the Owner, ACS shall arrange for the right of the Owner, or the Owner's designee, to assume those obligations and subcontracts directly, including all benefits to be derived therefrom.  ACS is also instructed to take whatever further actions may be necessary to coordinate the efficient and orderly transfer of materials, equipment, facilities, project records, other documents and any other property rightfully belonging to the Owner to either the Owner or the Owner's designee.

ACS is further instructed to prepare and submit to the Owner, at the earliest possible time, its final invoice for work that was actually performed prior to and up to this termination.  This final invoice shall conform to the requirements of the General Conditions of the Contract and, thus, shall include all supporting data required to both substantiate ACS's right to payment and to enable the Owner to review and verify the accuracy of the invoice and the scope and status of work actually completed.

We will contact you shortly with more specific instructions regarding the cancellation and/or transfer of orders and subcontracts and the transfer of material and other property. In the meantime, please do not hesitate to contact Mike DiChiacchio, Senior Construction Manager, at 610-647-1990 with any questions or concerns regarding these matters.

Sincerely,

*Dorothy M. Cooper*

Claim Manager/Risk Management
*Home Properties, Inc.*
850 Clinton Square
Rochester, New York 14604
Phone: (585) 246-4188
Fax: (585) 340-5937
Email: dorothco@homeproperties.com

*Discover the difference.  Discover Home.*